564 So.2d 31 (1990)
Robert Allen PORTER
v.
STATE of Mississippi.
No. 07-KA-58967.
Supreme Court of Mississippi.
June 13, 1990.
Joseph C. Langston, Langston Langston & Michael, Booneville, for appellant.
Mike C. Moore, Atty. Gen., John R. Henry, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and PRATHER and ROBERTSON, JJ.
HAWKINS, Presiding Justice, for the Court:
Robert Allen Porter appeals his conviction of manslaughter in the circuit court of Alcorn County and sentence to twenty years imprisonment. We find no error and affirm.

FACTS
On November 11, 1985, Robert Allen Porter had been living with Bobby Blaine Calvary and Cathy Vaughn (Calvary's live-in girl friend) in Corinth for about two months. That day was Porter's birthday, and beginning at 10 a.m. he and Calvary *32 celebrated by consuming several fifths of whiskey.
Around midnight, as Calvary, Vaughn and Porter were en route to the "Torch Club," the spinning wheels of a preceding car threw rocks into Calvary's windshield. While Calvary and Porter were talking with the driver, one Bryan Burcham, it so happened that Warren Franklin Williams (known by all who knew him simply as "Warren" Williams), Stephen Franks, and Ronald Scott (Scottie) Franks were leaving. These three injected themselves into the discussion and argument between Calvary and Burcham, apparently taking Burcham's side.
Although the remarks between the Williams group and Burcham group were hardly friendly, it also so happened that following this discussion the Williams group drove to Calvary's home to have a beer. While there another argument and fight broke out in which Porter kicked Williams from a bar stool, causing Williams' nose to bleed. Porter also got into blows with Stephen Franks. Then he whipped and beat Ronald Scott Franks with his fists and feet, hitting him, kicking him, and stomping him to death.
There is no necessity to go into further details of the hours following midnight in the Calvary residence. The evidence was sufficient to support Porter's conviction.
Porter was indicted for murder, but following trial convicted for manslaughter.
We will review the fact surrounding each assignment of error in giving our reasons for finding them without merit.

RULE 4.06
The first assignment of error complains of the circuit court's refusal to require the State to furnish defense counsel with copies of statements taken from Calvary, Williams and Stephen Porter. Trial took place in May, 1987, prior to our decision in Brock v. State, 530 So.2d 146, 152 (Miss. 1988), amending Rule 4.06 of the Rules of Criminal Procedure. At the time of trial, Rule 4.06 provided in pertinent part:
The prosecution shall disclose to each defendant or his attorney, and permit him to inspect, copy, test, and photograph upon request and without further order the following:
(1) Names and addresses of all witnesses in chief proposed to be offered by the prosecution at trial.
* * * * * *
(2) Copy of any exculpatory material concerning the defendant.
The State furnished the defense with the names and addresses of all State's witnesses. Prior to trial, by motions Porter requested copies of all statements given by the State's witnesses.
The circuit judge initially took the matter under advisement, and made no ruling. At trial Gerald Hammond, an investigating officer, testified that he had taken statements from Stephen Franks and Calvary. Defense counsel then requested copies of the statements. The court having found nothing exculpatory about them did not then require the State to furnish the defense copies. The court further ruled, however, that when the witnesses testified for the State, he would require the State to furnish the defense copies for cross-examination. The court also required the State to give the defense copies of Hammond's investigation notes for use in cross-examination.
Warren Williams was called as a State's witness, and defense counsel objected to his testifying because his correct name had not been furnished the defense. The State had given his name as "Ronald Warren Williams." His name in fact was "Warren Franklin Williams." The State had, however, given Williams' address as "3000 North 45 Highway, Woodlawn Trailer Park, Trailer Number 4, Corinth," which was correct. Williams testified that he was known by everyone simply as "Warren Williams."
Because of this error in Williams' christian name, the court declared a recess and permitted defense counsel to interview Williams that evening. The next day he refused to grant defense counsel's motion for a continuance or a mistrial.
*33 Williams then testified for the State, following which defense counsel cross-examined him at length. At no time prior to or during this cross-examination did defense counsel request a copy of Williams' statement given the police, or to examine the statement.
Stephen Franks testified as a witness for the State, and again at no time during his direct examination, or preceding or during his cross-examination did defense counsel request a copy of the statement to use in his cross-examination.
After Franks had been excused as a witness, defense counsel made the following motion in chambers:
BY MR. LANGSTON:
Thank you, Your Honor. First of all, Your Honor, I want to renew my Motion for Mistrial in regard to the witness who has testified this morning [Williams]. It is my belief that the State has in its possession statements given by these witnesses and these statements were used to refresh the memory of the witnesses before they came on the stand, and they reviewed these statements and were used in preparation of testimony. We were not provided these on discovery. I am requesting them, and I am renewing my Motion for Mistrial in that regard.
BY THE COURT:
All right, I have reviewed the statements of witnesses who have testified thus far, who had statements. I have found no material contradiction or discrepancy in those statements and their testimony. Motion for Mistrial will be overruled.
BY MR. LANGSTON:
Your Honor, I will also ask the Court to allow us to review these.
BY THE COURT:
Overruled.
When the court excused the jury for the day, the State announced it intended to call Calvary as a witness the following morning. Defense counsel requested a copy of the taped statements given by Calvary to the State. He stated Calvary was "our witness," and that Calvary wanted defense counsel present when he [Calvary] reviewed his statement. Defense counsel again objected to the State's witnesses using their prior statements to refresh their memories, and he was concerned about Calvary's condition when he gave his statement.
The State responded that it would be willing to furnish the statements of Calvary for impeachment purposes.
The court retired to chambers with Calvary for him to hear his statements given the police.
Defense counsel again requested that he be permitted to examine the statements of witnesses who had previously testified, claiming they had refreshed their memory from their pretrial statements. The court then made the following ruling:
BY THE COURT:
Well, I think your Motion is not timely made. They have already testified; they have been cross-examined. You didn't request it while they were testifying, or make any record as to whether or not they had reviewed their testimony.
The court then ruled, however, that he would permit counsel to make his record, when they were through with the trial, if defense counsel wished, but not at that moment, that the witnesses had testified, been cross-examined and there was no proof in the record that "they refreshed their memory with anything."
During the course of Calvary's testimony for the State, the court did permit defense counsel to listen to his pretrial taped statement, and also directed the prosecuting attorney to furnish defense counsel the notes made by the district attorney of Calvary's grand jury testimony.
When both sides had rested, defense counsel made a motion for a mistrial "about witnesses preparing themselves by statements that were not provided to us."
The court ruled that he would be allowed to do so after there had been a verdict on record.
Following the jury's verdict defense counsel renewed his motion for a mistrial *34 "because several witnesses for the State had used prior statements and/or tapes in preparation for their testimony." The court then made the following ruling:
BY THE COURT:
Include that in your Motion for New Trial and you can present whatever testimony you desire and proof at that time.
The State then offered to the Court for identification, and for the record, copies of the statements and tapes. As to furnishing them to the defense, the prosecuting attorney stated, "We can make that available to them, too, at a later time."
The judgment of conviction was entered May 16, 1987, and a motion for a new trial filed May 26. Paragraphs IV, V and VI of the motion complained of the court's refusal to require the State to furnish the defendant written statements or tapes containing pretrial statements of witnesses. The error complained of in this refusal is set out in paragraph VI:
The Court erred in failing to permit the attorneys for the defendant to review the written statements and taped statements of witnesses for the State who reviewed their statements prior to the testifying to refresh their memory.
No complaint was made in the motion for a new trial that defense counsel had been denied an opportunity to review the statements of Williams and Franks prior to cross-examination for impeachment purposes.
There was no hearing on the motion for a new trial.
We have set forth the record developments at some length to respond to Porter's first assignment of error. Prior to Brock, supra, there was no requirement that the State furnish pretrial statements of witnesses, and there was no violation of the Rule 4.06 in this case.
Porter's assignment of error under this point may be summarized as follows:
1. The pretrial statements were used by one witness to coach another witness, which was in violation of Rule 615 of the Mississippi Rules of Evidence.
2. There was a "refusal" to disclose the contents of the tapes prior to cross-examination, thereby prohibiting defense from using the statements for cross-examination.
As to the first contention, we know of no rule of evidence which prohibits counsel for either side in interviewing witnesses singly or in groups preparatory to trial from reviewing with them the version of every witness as to the facts. Porter's reliance on Douglas v. State, 525 So.2d 1312 (Miss. 1988), is misplaced. In that case we criticized a tactic of either the attorney or another witness informing, during the course of a trial, a sequestered witness of the testimony just given by a preceding witness. There is no evidence that anything of this sort occurred in this trial. Indeed, there is no evidence that pretrial statements were reviewed by any witness at any time. No witness was specifically asked such a question during trial, and manifestly no effort was made to offer proof of it in a new trial hearing.
As to Porter's second contention, this simply is incorrect. The circuit judge clearly informed counsel that he would be afforded opportunity to review pretrial statements prior to cross-examination. On the witnesses Williams and Franks, counsel made no effort to obtain the statements either during the direct examination, prior to cross-examination, or during cross-examination. As to the witness Calvary, counsel was given the opportunity to review his pretrial statement prior to ever cross-examining him.
Moreover, Porter was given the clear opportunity by the circuit judge to make a record as to whether the Williams and Franks pretrial statements were inconsistent with their trial testimony. The motion for a new trial makes no complaint that he was denied the use of these statements for purposes of cross-examination. Instead, there was simply the blanket complaint that he was entitled to a new trial because he did not have them.
In sum, Porter was given the opportunity by the circuit judge to make a record showing that the statements were exculpatory, *35 or that they contained material which could properly have been used for impeachment purposes. Porter made no effort to make such a showing of record. No error was committed in the first place, and if error had been committed it was waived by failure to allege and develop such error in his motion for a new trial. Freeland v. State, 285 So.2d 895, 896 (Miss. 1973); Berryhill v. Byrd, 384 So.2d 1026, 1028 (Miss. 1980).
Nor is there any merit in Porter's claim that he was entitled to a continuance because the State did not give the full correct name of Warren Williams. The "Warren Williams" by which he was known by everyone was correct; the other name was not. Nevertheless, the State gave a detailed and correct address of Williams, and had defense counsel chosen to seek him out and interview him prior to trial, he would have suffered no impediment because the name furnished him did not give the full correct name. This claim of error is frivolous.

AUTOPSY PICTURES
Porter contends the circuit court erred in admitting into evidence photographs taken by the pathologist in his postmortem examination of the decedent, showing internal organs removed.
These photographs were probative, however, and relevant in showing that the blows administered by Porter caused the death of Ronald Scott Franks.
We have carefully reviewed the record and citations of authority in Porter's briefs, and find no merit in the remaining assignments of error.
AFFIRMED.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., PRATHER, ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.