Christopher Lindsey WATKINS *v.* STATE of Arkansas

CR 94-659                                        895 S.W.2d 532

Supreme Court of Arkansas
Opinion delivered April 3, 1995

*Evelyn L. Moorehead*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Clint Miller*, Acting Deputy Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. The appellant, Christopher Lindsey Watkins, raises two points for reversal in this appeal from his conviction of the offense of attempted murder. He argues that the trial court erred in (1) not declaring Acts 535 and 551 of 1993 unconstitutional and (2) not allowing cross-examination of a witness for the prosecution on a previous criminal history involving theft. Neither issue has merit, the first having been recently addressed in *Williams* v. *State*, 318 Ark. 846, 887 S.W.2d 530 (1994), and reiterated in *Diffee* v. *State*, 319 Ark. 669, 894 S.W.2d 564 (1995) (rev'd on other grounds). We therefore affirm the judgment of the trial court.

It should be noted at the outset that this court has jurisdiction in the present matter, despite the fact that the appellant's term of incarceration is thirty years, because the constitutionality of an act of the General Assembly was called into question. Ark. Sup. Ct. R. 1-2(a)(3).

*Facts*

Shortly after 4:00 p.m. on Friday, September 25, 1992, Teresa Sims, a secretary at Parkview High School in Little Rock, heard the front-office intercom buzz. When she responded, she heard a scream from a classroom. Ms. Sims alerted the school security officer, Jill Makowsky, and the two went to investigate. Ms. Sims reached the classroom first and, looking through the window of the locked door, saw the appellant, Christopher Watkins, standing over someone who was lying on the floor. She noticed blood "all over the floor and some on the person."

When Ms. Makowsky arrived at the classroom, she pulled on the bolted door and ordered Watkins to open it. Watkins refused, saying, "Go around. The other door's open." Ms. Makowsky found no other entrance into the classroom. Meanwhile, at Ms. Makowsky's direction, Ms. Sims left to call 911.

The lights in the classroom had been turned off, but Ms.

Makowsky was able to see a teacher, Debbie Fulbright, on the floor and a pocket knife cupped in Watkins's hand. She then went to the cafeteria where the football team was meeting and sought assistance. One of the adults returned with her to the classroom, from which Watkins was emerging. Ms. Makowsky instructed him to leave and watched him walk "real calmly" around a wall and up a hallway.

At that point, Ms. Makowsky ran into the classroom and spoke to Mrs. Fulbright, who was lying in blood. The assistant principal, Anne Hansen, appeared, and she and Ms. Makowsky asked Mrs. Fulbright who had stabbed her. Mrs. Fulbright stated that Chris Watkins had done it because he had received a "behavioral document." Ms. Hansen and Ms. Makowsky kept talking to her until the emergency services arrived. During that period, Mrs. Fulbright continued to repeat the name "Chris."

Mrs. Fulbright was subsequently diagnosed in a hospital emergency room as being in a state of "profound shock," having sustained multiple knife wounds and having lost about half of her blood volume. Approximately five or six hours of surgery were required that night and additional surgery the following week.

Before this incident occurred, James Alden, a Parkview student, also received from Mrs. Fulbright a "behavioral document" similar to that given Watkins. He testified that Watkins had showed him a knife after they had received their behavioral documents and had told him that he was going to stab Mrs. Fulbright.

Watkins was arrested on the same day of the attack and was charged by information with the felony offense of criminal attempt to commit murder in the first degree, pursuant to Ark. Code Ann. § 5-3-201 (Repl. 1993). Prior to Watkins's initial trial, the Arkansas General Assembly met in regular session and passed Acts 535 and 551, identical legislation setting forth new sentencing guidelines and procedures in felony criminal cases. Under the new acts, a bifurcated sentencing procedure was mandated after January 1, 1994, for a period extending to June 30, 1997, replacing the previous unitary system in which punishment was fixed by the jury at the same time that guilt was determined.

In December 1993, Watkins was tried under the earlier uni-

tary procedure. A mistrial was declared due to a hung jury. In mid-February 1994, after the effective date of Acts 535 and 551, a second trial was conducted. During that trial, Watkins filed a motion requesting the trial court to find Act 535 of 1993, as codified at Ark. Code Ann. § 5-4-103 (Repl. 1993) and Ark. Code Ann. § 16-97-101 *et seq.* (Supp. 1993), unconstitutional, arguing, among other things, that, by making the bifurcation process applicable to offenses occurring before its effective date, the act violates the *ex post facto* requirements of Article I, § 9(3) of the United States Constitution and Article 2, § 17 of the Arkansas Constitution; that, by allowing victim-impact statements, the act violates the requirements of *Payne* v. *Tennessee,* 111 S.Ct. 2597 (1991); and that the bifurcation process violates the Due Process and Equal Protection Clauses of the United States and Arkansas Constitutions. The trial court denied the motion.

In the second trial, the jury found Watkins guilty of attempted first-degree murder. During the penalty phase, the jury received victim-impact testimony and other evidence and fixed Watkins's sentence at thirty years. From that judgment, this appeal arises.

### I. Constitutionality of Act 535 and 551 of 1993

On Friday, February 18, 1994, the second day of trial, Watkins filed a written motion requesting the trial court to declare Act 535 of 1993 unconstitutional. The trial court denied the motion. It is Watkins's position on appeal that the bifurcation procedures set forth in Acts 535 and 551 were applied retroactively to him; that the attempted first-degree murder occurred on September 25, 1992; and that the bifurcated procedure did not become effective in Arkansas circuit courts until January 1, 1994.

The trial court found that the motion was untimely and, further, that the Attorney General had not been notified and that the motion had no merit. Granted, the effective date of the legislation accounts for the fact that the motion was not filed at the time of the first trial. The change in the law, however, cannot afford extenuation for Watkins's failure to file his motion at the earliest opportunity.

At the very outset of the first day of trial, Thursday, February 17, 1993, the trial court conducted a proceeding under the heading of "Bill of Exceptions" in which witnesses and other

trial-related matters were discussed at length. Watkins had ample opportunity at that point to make his motion concerning the constitutionality of Act 535, yet he announced that he was ready for trial. He elected to wait until the second day of trial, Friday, February 18, 1993, to file his motion and alerted the court of its pendency only on the third day of trial, Tuesday, February 22, 1993.[1] An issue must be presented to the trial court at the earliest opportunity in order to preserve it for appeal. *Fuller* v. *State*, 316 Ark. 341, 872 S.W.2d 54 (1994).

We hold that the motion in question was untimely and that the trial court did not err in denying it. For this reason, it is unnecessary for us to address the subpoints relating to *ex post facto* application, due process, equal protection, and victim-impact evidence.

## II. Witness's previous criminal history

At trial, James Alden, a Parkview student who, along with Watkins, received a behavioral document from Mrs. Fulbright on September 25, 1992, testified that, after the two had been written up, "Chris told me that he was going to stab Mrs. Fulbright, but I didn't believe him. And then he showed me a knife." Alden stated that Watkins had "said like he was going to stab other teachers and stuff like that before" and that he didn't believe he was serious, even after he displayed the knife.

Subsequently, outside the hearing of the jury, defense counsel proffered information, through voir dire of the witness, that Alden had stolen a gun:

Q Have you ever stolen a gun?

A Yes, ma'am. But I'm not proud of that.

Q Okay. Have you ever lied about it?

A To my mom and other people.

The trial court declined to allow counsel to cross-examine Alden about the stolen gun, ruling that Ark. R. Evid. 608(b) does not permit the introduction of proof by extrinsic evidence of specific

---

[1] No court session was held on Monday, February 21, 1993, a holiday.

instances of the conduct of a witness for the purpose of attacking or supporting credibility other than conviction of a crime as provided by Rule 609.

Under Ark. R. Evid. 609(a), it is provided that

> For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted but only if the crime (1) was punishable by death or imprisonment in excess of one [1] year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to a party or a witness, or (2) involved dishonesty or false statement, regardless of the punishment.

According to Watkins, his counsel should have been able, under Rule 609(a), to ask Alden whether he had ever stolen a gun. Yet nowhere in the record does there appear proof that Alden had been convicted of an offense entailing one year or more imprisonment or involving dishonesty or false statement, a prerequisite under Rule 609(a).

Further, Watkins's effort to cross-examine Alden was denied specifically on the basis of Rule 608(b), which focuses on the character of the witness for truthfulness or untruthfulness. Whether Alden had previously stolen a gun was not probative of truthfulness. *See Rhodes* v. *State*, 276 Ark. 203, 634 S.W.2d 107 (1982), where we held that an absence of respect for the property rights of others, though an undesirable trait, does not directly indicate an impairment of the trait of truthfulness. The trial court did not err in refusing to permit cross-examination of Alden with respect to the previous theft of a gun.

Affirmed.