Debra BAYLESS *v.* STATE of Arkansas

CR 96-920                                                935 S.W.2d 534

Supreme Court of Arkansas
Opinion delivered December 16, 1996

*Dennis R. Molock*, Public Defender, for appellant.

*Winston Bryant*, Att'y Gen., by: *Vada Berger*, Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. Debra Bayless, the appellant, was charged as an habitual offender in the Arkansas County Circuit Court with five counts of theft of property. Ark. Code Ann. §§ 5-36-103(a)(2); 5-4-501 (Repl. 1993). At the conclusion of the State's case-in-chief, the Trial Court dismissed one of the counts upon Ms.

Bayless's motion for directed verdict. The jury returned guilty verdicts on the remaining counts, and Ms. Bayless was sentenced to a prison term of sixty years and a fine of $8,000. On appeal, Ms. Bayless contends that her conviction should be reversed because (1) the State was permitted to introduce the testimony of her former husband, Ricky Bayless, in violation of Ark. R. Evid. 615; and (2) the State was permitted to introduce the testimony of Mr. Bayless and a bank employee, as well as a subpoenaed bank statement, despite the State's failure to disclose the evidence in response to a request made pursuant to Ark. R. Crim. P. 17.1. We affirm the conviction because Ms. Bayless's arguments are either meritless or barred on procedural grounds.

The abstract reveals that Ricky and Debra Bayless were employed by the Lone Tree Cemetery in Stuttgart shortly after their marriage in November 1993. Mr. Bayless served as a caretaker, and Ms. Bayless worked in an office on the grounds. Although the Baylesses soon separated, they continued to operate a business at the cemetery known as D & R Monument, which sold cemetery monuments and grave stones. Ms. Bayless ran the business out of the cemetery office. She would receive orders and payments from interested customers and forward the orders to a manufacturer in Georgia known as the Worley Monument Company.

Ms. Bayless was charged with theft after a number of her customers complained to the local prosecutor that they had given checks to Ms. Bayless payable to D & R Monument for monuments they did not receive. The State attempted to show at trial that Ms. Bayless had taken her customers' checks by deceit, with the purpose of depriving her customers of their money, and with no intention of providing them with the monuments they ordered. The testimony given by the complaining witnesses during the State's case-in-chief established that, from January to April 1995, Ms. Bayless received the customers' monument orders and checks in amounts ranging from $218 to $1,430; that Ms. Bayless endorsed the checks and cashed or deposited them, typically on the day the checks were written; that the customers received neither monuments nor refunds; and that they attempted to inquire with Ms. Bayless and had difficulty locating her. In addition, the State introduced the complaining witnesses' receipts and cancelled checks. This was the extent of the State's case-in-chief.

Ms. Bayless's case-in-chief consisted of her testimony and the

exhibits she introduced. Although Ms. Bayless acknowledged receiving monument orders from the complaining customers and admitted to taking their checks, she denied taking the checks with the intent to deceive. She maintained that she forwarded the orders to the Worley Monument Company in Georgia but explained that the monuments were not delivered because D & R Monument had not made sufficient payments on the invoices. According to Ms. Bayless, it was Mr. Bayless's responsibility to pay the business's bills, and she testified that she had made the customers' checks available for that purpose by depositing them in D & R Monument's account at Farmers and Merchants Bank or by cashing the checks and giving the cash to Mr. Bayless. Ms. Bayless acknowledged that she was authorized to write checks on D & R Monument's account, but she insisted that she could not pay any bills, including those owed to the Worley Monument Company, with D & R Monument funds unless she obtained Mr. Bayless's permission.

Ms. Bayless testified that most of the debt owed by D & R Monument to the Worley company remains unpaid. She indicated, however, that she made a $500 payment with a cashier's check that she claimed to have purchased with her own money on April 13, 1995. On cross-examination, Ms. Bayless admitted that this was the same date on which she cashed a check for approximately $700 written by Nellie Mayfield, one of the complaining customers. Ms. Bayless insisted, however, that she gave the cash to Mr. Bayless.

Upon further cross-examination, Ms. Bayless denied depositing any of her customers' checks in her personal account. The prosecutor specifically asked Ms. Bayless whether, on January 30, 1995, she deposited into the savings account she shared with her boyfriend, Jeffrey Rose, any portion of the $1,430 check that was payable to D & R Monument and written on January 30 by Ida Mae Gaither, one of the complaining customers. Ms. Bayless answered in the negative and asserted that the Gaither check was deposited into the D & R Monument business account on January 30, 1995.

The prosecutor then showed Ms. Bayless the cancelled check written by Ms. Gaither, as well as a bank statement on the Bayless-Rose savings account. After examining the documents, Ms. Bayless acknowledged that the bank statement revealed a large deposit in the account on January 30, 1995, and that the Bayless-Rose account number — not the D & R Monument account number —

appeared on the back of Ms. Gaither's cancelled check. Ms. Bayless's explanation for the account activity on January 30 was that Mr. Rose had deposited his pay check. Ms. Bayless further suggested that the appearance of the Bayless-Rose account number on the back of the Gaither check was due to an error on the part of the bank. Defense counsel did not object to the prosecutor's use of the bank statement in the course of cross-examining Ms. Bayless.

The State then offered what it asserted was rebuttal evidence. The State first called Mary Shelton, an employee of the Farmers and Merchants Bank. Defense counsel objected to Ms. Shelton because the State had not disclosed her name as required by Rule 17.1. The State responded that Ms. Shelton was a rebuttal witness and that it had no obligation to furnish the names of rebuttal witnesses in discovery. Defense counsel did not challenge that assertion, and the Trial Court permitted Ms. Shelton to testify.

The prosecutor showed Ms. Shelton the bank statement on the Bayless-Rose savings account. Defense counsel requested a sidebar conference, and the prosecutor revealed that he had obtained the bank statement on the morning of trial but that he had subpoenaed the statement four or five days prior to trial. Defense counsel objected to the prosecutor using the statement because it had not been furnished. The prosecutor again claimed that he had no obligation to disclose the bank statement because it was rebuttal evidence. Defense counsel maintained that the bank statement was not genuine rebuttal evidence because it had been subpoenaed well before trial and because the prosecutor, by his own admission, anticipated using it at trial. The Trial Court allowed the prosecutor to use the bank statement in the course of questioning Ms. Shelton and to introduce the statement into evidence over defense counsel's objection.

Ms. Shelton examined the bank statement on the stand and testified that a deposit of $1200 was made in the Bayless-Rose savings account on January 30, 1995. Ms. Shelton also examined the cancelled check for $1,430 written by Ms. Gaither and testified that the account number stamped on the back of the check was the number of the Bayless-Rose savings account. Ms. Shelton concluded that the $1,200 deposit was made with funds from the Gaither check, but she conceded that she did not know who made the deposit.

The State then called Mr. Bayless as its final rebuttal witness. Defense counsel initially objected to Mr. Bayless because his name had not been disclosed by the State. The prosecutor argued that Mr. Bayless was a true rebuttal witness because he would respond to Ms. Bayless's allegations that he had received some of the money paid by the customers. It is not clear from the abstract if defense counsel obtained a ruling on this particular objection.

Defense counsel raised a second objection to Mr. Bayless based on Ark. R. Evid. 615. Defense counsel conducted a *voir dire* examination of Mr. Bayless and elicited the following testimony as abstracted:

> I was notified to come up here and testify a little bit ago. I was notified by David Cowart, a Stuttgart police officer, within the last hour and a half. I have not really been made aware of any of the evidence or of what any of the evidence has been so far. I figured, my speculation is that my former wife probably turned it around where it's all my fault. No one has discussed it clearly with me anyway. It was just stated that possibly it was looking like she was trying to blame it all on me. I am being called upon to testify basically to defend my word. I had been told that she, not really that she had blamed, just basically it looked like it was all my fault. ... She has said that I'm the reason that ... [t]he bills haven't been paid ... and the monuments haven't been ordered.

Mr. Bayless indicated that he had arrived at the courthouse around 2:00 p.m. that day, that he had not talked with the prosecutor before his arrival, and that the prosecutor had not told him what to say.

On the basis of this *voir dire* testimony, defense counsel objected to Mr. Bayless's testimony and asked the Trial Court to declare Mr. Bayless "unavailable" as a witness because he had learned the content of Ms. Bayless's testimony in violation of Ark. R. Evid. 615. The prosecutor argued that he had not prepared Mr. Bayless and that he had merely explained to Mr. Bayless that his testimony was necessary in order to refute Ms. Bayless's claim that she had given Mr. Bayless the customers' money. The Trial Court overruled the objection and permitted Mr. Bayless to testify.

Mr. Bayless testified that Ms. Bayless handled the day-to-day business of D & R Monument and was responsible for paying the

business's bills. Mr. Bayless said that his activities around the cemetery were limited to caring for the grounds and that he had little to do with the business's affairs. Mr. Bayless specifically denied receiving any cash from Ms. Bayless derived from the checks paid by customers for grave markers or monuments, but he acknowledged that Ms. Bayless had given him checks that he deposited in the D & R Monument account.

### 1. The witness-sequestration rule

We first address Ms. Bayless's argument that the Trial Court received Mr. Bayless's testimony in violation of the "witness-sequestration rule" set forth at Ark. R. Evid. 615. That rule provides as follows:

> At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party that is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause.

Although Ms. Bayless has failed to abstract the "invocation of the rule," we reach the merits of her argument because other portions of the abstract make clear that the parties indeed requested the exclusion of witnesses in accordance with Rule 615.

Ms. Bayless contends that the Trial Court erred in permitting Mr. Bayless to testify because he had ascertained the nature of her testimony through communications with the prosecutor before taking the stand. Ms. Bayless apparently bases her argument on Mr. Bayless's testimony that he was informed that Ms. Bayless had "blamed" him for the non-delivery of the customers' monuments and on the prosecutor's statement that he told Mr. Bayless that his testimony was necessary to refute some of Ms. Bayless's statements.

The thrust of Ms. Bayless's argument is that Rule 615 prohibits an attorney, in the course of preparing his or her witness, from describing in any way what another witness has said on the stand. We are not aware of any case law from this jurisdiction that stands for such a broad proposition, and we reject Ms. Bayless's interpretation of Rule 615 because it would unduly restrict an attorney's

ability to consult with witnesses before examining them at trial.

Like other courts, we believe that "[a]ttorneys, including the district attorney and his assistants, are entitled to talk with witnesses before placing them upon the witness stand." *State* v. *Carswell,* 253 S.E.2d 635, 637 (N.C. Ct.App. 1979). It is not impermissible for "the prosecutor to discuss with a witness the testimony he would give from the witness stand," *State* v. *Brock,* 633 P.2d 805, 814 (Or.App. 1981), and we agree that a prosecuting attorney "has a right to interview his witnesses before they testify, and any sequestration order could not prohibit such." *United States* v. *Klinginsmith,* 25 F.3d 1507, 1511 (10th Cir. 1994). We simply are not aware of any rule of evidence that "prohibits counsel for either side in interviewing witnesses singly or in groups preparatory to trial from reviewing with them the version of every witness as to the facts." *Porter* v. *State,* 564 So.2d 31, 34 (Miss. 1990). *See Lutz* v. *State,* 536 N.E.2d 526, 529-30 (Ind.App. 1 Dist. 1989); *State* v. *Allison,* 147 N.W.2d 910, 912 (Iowa 1967), *cert. denied* 391 U.S. 906. *See also Moffett* v. *State,* 540 So.2d 1313, 1317 (Miss. 1989)("The purpose of the rule is *not,* and never has been, to prevent attorneys from consulting with their clients' witnesses.")

We are well aware of Rule 615's necessity in trial practice. As we have stated, the rule is a valuable tool for "discouraging and exposing fabrication, inaccuracy, and collusion." *King* v. *State,* 322 Ark. 51, 55, 907 S.W.2d 127 (1995) (citations and internal quotations omitted). *See also Moffett,* 540 So.2d at 1317 (stating sequestration is "a means of insuring that a witness' testimony would not be influenced by the testimony of other witnesses"). With today's opinion, we simply recognize that Rule 615 imposes no *per se* bar on an attorney's ability to prepare a witness through proper methods.

We caution, however, that there is a "line that exists between perfectly acceptable witness preparation on the one hand, and impermissible influencing of the witness on the other hand." *State* v. *Earp,* 571 A.2d 1227, 1235 (Md. 1990). That line "may sometimes be fine and difficult to discern." *Id.* We agree with the Mississippi Supreme Court that trial lawyers, in the course of preparing their witnesses, "must be careful not to indicate *specifically* what other witnesses have testified about." *Douglas* v. *State,* 525 So.2d 1312, 1319 (Miss. 1988) (emphasis added), and "[w]e admonish trial judges to be aware of the possibility that the sequestra-

tion rule may be circumvented in the guise of attorneys 'prepping' their witnesses." *Id.* Whether an attorney violates Rule 615 in the course of preparing a witness must be determined on a case-by-case basis.

■   On this record, we cannot say that the communication between Mr. Bayless and the prosecutor amounted to an "indirect method of hearing testimony of another witness" in violation of Rule 615. *Doby* v. *State,* 532 So.2d 584, 589 (Miss. 1988). Mr. Bayless testified that "[n]o one has discussed [Ms. Bayless's testimony] clearly with me anyway," and there is no indication that Mr. Bayless fabricated or tailored his testimony in violation of the rule. Moreover, the record does not suggest that the prosecutor told Mr. Bayless what to say on the stand or revealed to him the specifics of Ms. Bayless's testimony. At most, we conclude the prosecutor told Mr. Bayless why he had been called to testify and in so doing indicated the general nature of Ms. Bayless's testimony. We find that the prosecutor made this disclosure consistently with Rule 615 and affirm the Trial Court on this point.

## 2. Discovery and rebuttal evidence

We now turn to Ms. Bayless's assertion that the Trial Court should have excluded the Bayless-Rose bank statement and the testimony of Ms. Shelton and Mr. Bayless on account of the prosecutor's failure to disclose his intention to use this evidence in discovery. We affirm on these points because they are not preserved for appellate review.

> Arkansas Rule of Criminal Procedure 17.1(a)(v) provides that the prosecuting attorney shall disclose to defense counsel, upon timely request, ... any books, papers, documents, photographs or tangible objects, which the prosecuting attorney intends to use in any hearing or at trial or which were obtained from or belong to the defendant .....

■   As we noted above, the prosecutor first used the bank statement in the course of cross-examining Ms. Bayless. The prosecutor used the statement again, and introduced it into evidence, during the rebuttal phase. Only at this second juncture did defense counsel object to the statement on the basis that the statement had not been furnished. On appeal, Ms. Bayless argues that the Trial Court erred in permitting the prosecutor to use the bank statement, but we agree with the State's position that this argument is proce-

durally barred in light of defense counsel's failure to object to the statement at the first opportunity to do so — *i.e.*, when it was used during cross-examination. The objection was made only during the rebuttal phase of the trial, and we find that it was untimely. *Turner* v. *State*, 325 Ark. 237, 245, 926 S.W.2d 843 (1996); *Johnson* v. *State*, 325 Ark. 197, 204, 926 S.W.2d 837 (1996).

We also find that defense counsel failed to preserve his discovery-based objections to Mr. Bayless and Ms. Shelton. As we indicated, the abstract does not reveal any ruling from the Trial Court on the objection to Mr. Bayless. The failure of an appellant to obtain a ruling on her objection is fatal to her claim. *Laudan* v. *State*, 322 Ark. 58, 59, 907 S.W.2d 131 (1995). The objection to Ms. Shelton is likewise not preserved for review because defense counsel did not challenge the State's assertion that she was a genuine rebuttal witness whose name was not required to be furnished in discovery.

Affirmed.

GLAZE, J., concurs with respect to Part One of the opinion.