Everett FOREMAN *v.* STATE of Arkansas

CR 96-1272
945 S.W.2d 926

Supreme Court of Arkansas
Opinion delivered May 27, 1997

*Montgomery, Adams & Wyatt, PLC,* by: *Dale E. Adams,* for appellant.

*Winston Bryant,* Att'y Gen., by: *Kelly K. Hill,* Deputy Att'y Gen., for appellee.

DAVID NEWBERN, Justice. Everett Foreman and Durell Childress were charged with the murder of Little Rock Police Officer Henry Callanen. They were tried separately. Mr. Childress was convicted of capital murder and sentenced to life imprisonment. We affirmed the judgment on appeal. *Childress v. State,* 322 Ark. 127, 907 S.W.2d 718 (1995). Mr. Foreman was convicted of first-degree murder and sentenced to life imprisonment. We reversed the judgment against Mr. Foreman and remanded the case. *Foreman v. State,* 321 Ark. 167, 901 S.W.2d 902 (1995). Upon retrial, Mr. Foreman was again convicted and again sentenced to life imprisonment. He has raised six points of appeal, none of which requires a second reversal; thus, we affirm the judgment.

## 1. *Sufficiency of the evidence*

Officer Callanen was shot and killed while working, off-duty, for a McDonald's restaurant. The evidence against Mr. Foreman included a statement he gave to the police after his arrest in which he admitted driving Mr. Childress to the restaurant on the night of the shooting, waiting with Mr. Childress while standing in some bushes behind the restaurant and seeing Officer Callanen emerge, hearing gunshots, running from the scene, and telling his girlfriend, Tracy Brooks, that Mr. Childress had "done something bad."

Mr. Foreman's testimony at the trial differed somewhat. He stated that Mr. Childress had said he needed some money and that he knew Mr. Childress was carrying a silver .22 automatic. He said his purpose in going to the restaurant was to get free food from a friend who previously had brought food to him at the rear door. Mr. Foreman testified that he was peering in at the back door when he heard Mr. Childress mention that Officer Callanen had emerged from the restaurant and saw Mr. Childress pull out his pistol. At that point, Mr. Foreman testified, he ran away. He said that he did not know Mr. Childress was planning to rob the

restaurant and that he took no part in the attempted robbery or shooting.

The State's witnesses included Tonya Butler, who lived near the restaurant. Ms. Butler testified that her brother told her it looked like someone was about to rob McDonald's. She went outside and saw two people in the bushes near the restaurant, one squatting down "peeking" and the other standing up beside the drive-through menu board. She went inside and tried to telephone the restaurant without success. When she came back outside, she saw one person approach the side of the restaurant and then heard gunshots. She then telephoned 911 and saw someone run across her yard.

Anthony Brown testified that he was working at the restaurant on the night of the shooting. He testified that Officer Callanen had arrived around midnight to collect the day's deposit. As the Officer was getting in his car to depart, Mr. Brown heard a gunshot. Officer Callanen got out of his car to see what was happening. A second shot was fired. Officer Callanen returned fire as he was falling. Mr. Brown's girlfriend, Carla Jackson, was waiting for him in a car in the restaurant parking lot.

Carla Jackson testified she heard shots and saw a man holding a gun near the restaurant drive-in window. She heard a voice say "drop it." She drove away but returned to find Officer Callanen on the ground.

Keith Abney, owner of the restaurant, testified that Mr. Foreman had been employed at the restaurant and had on at least two occasions assisted in the closing routine. Mr. Abney testified that Officer Callanen worked as a security guard for the restaurant during Mr. Foreman's employment there.

Dedric Weems testified he heard Mr. Childress and Mr. Foreman planning a robbery some three weeks or a month before the shooting occurred. He did not know where the robbery was to occur, but he knew it would be somewhere in their neighborhood.

Mr. Foreman's girlfriend, Tracy Brooks, testified she was with Mr. Foreman the night of the shooting. She lived with Mr.

Foreman and his family. Ms. Brooks said she had been questioned by the police after the incident but she could not remember what she had told them. She said the police had been verbally abusive to her and had threatened her and that she said some things to the police in order to help Mr. Foreman. She said that Mr. Foreman, who was upset and crying on the night in question, had not discussed the shooting incident with her and that whatever she had told the police about the incident had come from Mr. Childress who had called the Foreman home that evening. She said that she knew about "the gun" and that she had seen Mr. Foreman and Mr. Childress with the gun that she had, on occasion, obtained from Mr. Foreman and carried in her purse.

Ms. Brooks was cross-examined extensively about a statement she had given to the police shortly after the event in question. For the most part, she said she could not remember having made the remarks contained in the statement. She ultimately admitted, however, that she had told the police that "Pee Wee" (Mr. Foreman's nickname) had shot the police officer.

■ The State's theory was that Mr. Foreman was an accomplice to the crime. Although there was no eye witness who could testify that Mr. Foreman was at the scene throughout the attempted robbery and shooting, there was circumstantial evidence to that effect. When the evidence is circumstantial, a conviction may be sustained if that evidence excludes every other reasonable hypothesis consistent with innocence. *Carter v. State,* 324 Ark. 395, 921 S.W.2d 924 (1996). Whether every other reasonable hypothesis has been excluded by the evidence is largely a factual determination to be made by the jury. *Chism v. State,* 312 Ark. 559, 853 S.W.2d 555 (1993); *Smith v. State,* 264 Ark. 874, 575 S.W.2d 677 (1979).

■ Mr. Foreman's statement to the police and his trial testimony placed him at the scene with another person who was carrying a weapon and had announced his need for money. Ms. Butler said she saw two men behind the restaurant prior to the shooting. She testified she saw a man running past her house after the shooting. Mr. Foreman said he ran prior to the shooting. That evidence, when combined with the testimony that Mr. Fore-

man and Mr. Childress had been overheard planning a robbery and the evidence that Mr. Foreman knew the restaurant's closing routine, makes a sufficient circumstantial case to go to the jury for a determination whether Mr. Foreman participated in the crimes charged. It was not error to overrule Mr. Foreman's motion for a directed verdict.

### 2. Improper impeachment

The statement given by Ms. Brooks to the police when she was interviewed shortly after the crime was highly inculpatory of Mr. Foreman. The prosecutor was permitted to question Ms. Brooks about her earlier statement for the purpose of impeaching her trial testimony. The Trial Court instructed the jury that the extra-judicial statement of Ms. Brooks could be considered only for the purpose of impeachment. The prosecutor had Ms. Brooks read large segments of the statement in which she told the police that Mr. Foreman had told her that he had shot at Officer Callanen's car and that Mr. Childress had called to say he thought Mr. Foreman had hit Officer Callanen.

The readings from the statement were interrupted occasionally by questions from the prosecutor referring to Ms. Brooks's trial testimony and making the impeaching comparison with her statement to the police.

In *Roberts v. State,* 278 Ark. 550, 648 S.W.2d 44 (1983), we roundly condemned the practice of using impeachment as a "subterfuge" for getting before the jury an unsworn, out-of-court statement of a witness that would not otherwise be admissible. We also said the limiting instruction was not sufficient to eliminate the danger of convicting an accused on inadmissible evidence. *See also Smith v. State,* 279 Ark. 68, 648 S.W.2d 490 (1983).

The problem with Mr. Foreman's reliance on the *Roberts* holding is that the readings by Ms. Brooks from her statement to the police occurred in segments. Long passages of the statement were read with no objection being made. It was not until the prosecutor's redirect examination that an objection was made. When an objection is not made at the earliest opportunity, it is waived. *Laymon v. State,* 306 Ark. 377, 814 S.W.2d 901 (1991);

*Ferrell v. State*, 305 Ark. 511, 810 S.W.2d 29 (1991). In addition, when the prosecutor responded to the objection by saying she had no way to impeach Ms. Brooks's testimony other than by having her read from her statement, the Trial Court merely said he could "relate to that." There was no ruling on the objection. Failure to obtain a ruling would preclude review of the issue even if there had been a timely objection. *Bayless v. State*, 326 Ark. 869, 935 S.W.2d 534 (1996).

### 3. Admissibility of pretrial statement

Statements given by accused persons who are in police custody are presumed to be involuntarily given; thus, the burden is on the State to prove voluntariness. As a part of overcoming that burden, the State must produce at a *Denno* hearing all of the persons who were witnesses to the taking of the statement or explain their absence. When the necessary witnesses are not produced, and no satisfactory explanation of their absence is forthcoming, we hold that evidence of the accused that his statement was involuntarily given "stands uncontradicted." *Gammel v. State*, 259 Ark. 96, 531 S.W.2d 474 (1976); *Russey v. State*, 257 Ark. 570, 519 S.W.2d 751 (1975).

In our earlier decision in this case, we held that the Trial Court erred in admitting Mr. Foreman's pretrial statement to the police because the State failed to produce a material witness at the *Denno* hearing held before the first trial and thereby failed to sustain its burden of proof as to the voluntariness of the statement. We reversed and remanded. Our mandate provided that the case was to be remanded to the Trial Court "for further proceedings to be therein had according to law, and not inconsistent with the opinion herein delivered." Over Mr. Foreman's objections, the prosecutor presented the testimony of the material witness at another *Denno* hearing held prior to the second trial. The officer denied abusing Mr. Foreman and testified that Mr. Foreman's statement had not been coerced and was voluntary. The statement was later admitted into evidence over Mr. Foreman's objection.

Mr. Foreman argues that the statement was admitted in the second trial in violation of the law-of-the-case doctrine. According to Mr. Foreman, our holding that the State did not prove the voluntariness of the statement on account of its failure to produce a necessary witness was in essence a "finding" that the statement was involuntarily given and therefore inadmissible. He asserts that, under the law-of-the-case doctrine, the Trial Court in the second trial was required by this finding to suppress the statement.

The question here is whether our previous holding that the State failed to sustain its burden of proof was the "law of the case" that barred the Trial Court from considering the voluntariness issue in a second *Denno* hearing and admitting the statement. In at least three cases in which we have reversed and remanded because of the State's failure to produce a witness to an accused's statement, we have—albeit without discussing the law-of-the-case doctrine—either directed that a second *Denno* hearing should occur or indicated that one could occur. *See Bell v. State,* 324 Ark. 258, 920 S.W.2d 821 (1996); *Williams v. State,* 278 Ark. 9, 642 S.W.2d 887 (1982)(Supp. Op. on Denial of Rehearing)(1983); *Smith v. State,* 256 Ark. 67, 505 S.W.2d 504 (1974). In the case now before us, we did neither.

The law-of-the-case "doctrine" consists of a set of distinct rules that "have developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit." 18 WRIGHT, ET AL., FEDERAL PRACTICE & PROCEDURE: JURISDICTION § 4478, at p. 788 (1981). The particular rule at issue here provides that "inferior tribunals are bound to honor the mandate of superior courts within a single judicial system." *Id.* at p. 792. As we have said, "[t]he law of the case doctrine would preclude a trial court on remand . . . from reconsidering earlier decisions made in the case before it." *Christian v. State,* 318 Ark. 813, 819, 889 S.W.2d 717, 720 (1994). *See also People v. Feagans,* 480 N.E.2d 153, 157 (Ill. App. Ct. 1985)(stating "the trial court is bound by the appellate court's resolution of the issues decided on appeal and must proceed in a manner consistent with the reviewing court's directions"). *See generally* Brett T. Parks, *McDonald's Corp. v. Hawkins and "The Law of the Case" Doctrine in Arkansas,* 50 ARK. L. REV. 127 (1997).

■ The doctrine precludes the trial court on remand from considering and deciding questions that were explicitly or implicitly determined on appeal. As the commentators have observed, "questions that have not been decided do not become law of the case merely because they *could* have been decided; at the same time, law of the case principles are applied when a court concludes that an issue was resolved *implicitly* despite the lack of any explicit statement." WRIGHT, *supra*, at p. 789 (emphasis added).

■ We must reject Mr. Foreman's argument because it is clear that we did not determine in *Foreman I* that his custodial statement was involuntary or inadmissible. We made no pronouncement in *Foreman I* with respect to the voluntariness of the statement. Rather, we held only that the State failed to carry its burden of proving the statement was voluntarily given and that the statement therefore should not have been admitted at trial. Our mandate permitted the Trial Court to conduct further proceedings consistent with our opinion in *Foreman I,* and the decision to hold a second *Denno* hearing was in accordance with our mandate.

An Illinois court of appeals dealt with the issue and held that an appellate decision that a conviction must be reversed because of the prosecution's failure to produce or explain the absence of a witness at a *Denno* hearing merely rendered the record "insufficient to determine the propriety of the trial court's denial of a motion to suppress a defendant's confession." *People v. Feagans*, 480 N.E.2d at 158.

Unlike the situation in which the State has done its best, but the overall proof was insufficient to go to the jury, this is an instance of trial error. Had the Trial Court held the statement inadmissible in the absence of the missing witness, the State might well have produced the witness as it ultimately did in the second attempt. There is, of course, no opportunity for a second attempt when a court has directed a verdict of acquittal due to the failure to produce sufficient evidence to go to the jury. A second trial in that instance would violate the prohibition against former jeopardy. *Williams v. State,* 328 Ark. 487, 944 S.W.2d 822 (1997); *Foster v. State,* 290 Ark. 495, 722 S.W.2d 869 (Supp. Op. on

Denial of Rehearing) (1987). This situation is fundamentally different.

■ We adopt the Illinois Court's rationale and hold that the law-of-the-case doctrine is not a bar to producing the witness at the second *Denno* hearing.

### 4. Dedric Weems's testimony

Before Dedric Weems testified to the conversation that he said he overheard between Mr. Foreman and Mr. Childress, defense counsel made a motion *in limine* to exclude Mr. Weems's testimony on the basis that the prosecutor, during Mr. Childress's trial, had sought to exclude the testimony as untrustworthy. The Trial Court denied the motion.

At trial, defense counsel raised no objection to Mr. Weems's testimony until after the prosecutor had completed her direct examination of Mr. Weems and had asked him about the conversation between Mr. Childress and Mr. Foreman that he said he had overheard. When the direct examination ended, a side-bar conference was held in which Mr. Foreman's counsel asked that the testimony be struck as too "speculative" because the incident had occurred "several months or weeks before the McDonald's incident" and had failed to mention any specific date, time, or victim. The request was denied.

After cross-examination, redirect, and then dismissal of Mr. Weems as a witness, Mr. Foreman's counsel renewed the objection and added an objection that the testimony violated Ark. R. Evid. 404(b) by accusing Mr. Foreman of a "prior bad act" and suggesting he would commit a robbery because he was a "bad person." Again, the objection and motion to strike were overruled.

In his testimony, Mr. Weems admitted that he had been smoking "weed" and drinking alcohol when he heard the plans for the robbery. He remembered telling the judge in Mr. Childress's trial that he was "half asleep" during the conversation he had overheard, and he could not remember the exact time when the conversation occurred.

In this appeal, Mr. Foreman argues that the Trial Court erred in admitting Mr. Weems's testimony over his objections concerning Rule 404(b) and the speculative nature of the testimony. We do not address these argument because it is clear that the objections were not timely. *Watkins v. State,* 320 Ark. 163, 167, 895 S.W.2d 532, 534 (1995)("An issue must be presented to the trial court at the earliest opportunity in order to preserve it for appeal.").

Although Mr. Foreman did raise a timely objection on the basis of his argument that the prosecutor had previously characterized Mr. Weems as an unreliable witness, that objection does not preserve for our review Mr. Foreman's arguments concerning Rule 404(b) and the allegedly speculative nature of Mr. Weems's testimony. An appellant must make a specific objection that apprises the Trial Court of his current argument, and he may not change arguments on appeal. *Pike v. State,* 323 Ark. 56, 912 S.W.2d 431 (1996); *Terry v. State,* 309 Ark. 64, 826 S.W.2d 817 (1992).

### 5. Joe Childress's testimony

Tracy Brooks's statement to the police implicating Mr. Foreman as the person who shot at Officer Callanen was admitted into evidence at the first trial on the ground that she was unavailable to testify. In response, Mr. Foreman presented a statement given by Durell Childress's brother, Joe Childress, to the police. Joe Childress told the police that his brother told him he was the person who did the shooting.

At the time of the first and second trials, Joe Childress was deceased. In the second trial, Mr. Foreman sought to introduce Joe Childress's statement. Mr. Foreman's counsel argued that the statement, although obviously hearsay, should be admitted under Ark. R. Evid. 803(24), which is the residual or "catch–all" exception for statements that have guarantees of trustworthiness equivalent to those supporting the other exceptions to the hearsay rule.

In colloquy between counsel for Mr. Foreman and the prosecutor, the law–of–the–case doctrine was mentioned. Mr. Fore-

man's counsel pointed out that the statement had been admitted in the first trial and asserted that the prior Judge's ruling as to the statement's admissibility was binding in the second trial.

There is some authority for Mr. Foreman's position. *See, e.g., Commonwealth v. Starr,* 664 A.2d 1326 (Pa. 1995). Other authority suggests that the argument is meritless. *See, e.g., United States v. Riley,* 684 F.2d 542, 545 n.5 (8th Cir. 1982).

■ Although Mr. Foreman presents an interesting legal question, we decline to address it further because the issue is not preserved for review. Although Mr. Foreman's abstract suggests that his counsel made an objection based on the law-of-the-case doctrine to the Trial Court, our review of the record shows that defense counsel only discussed the point with the prosecutor. There is no indication that a law-of-the-case argument was made to the Trial Court or that the Judge even heard the colloquy between counsel. The Trial Court's sole remark concerning Joe Childress's statement was his ruling on Rule 803(24). Because the Trial Court was not presented with an argument on this point concerning the law of the case, and made no ruling on it, the issue is barred. *Terry v. State, supra.*

### 6. Improper argument

In closing argument, the prosecutor implored the jury not to be the "weakest link" in the justice system. Counsel for Mr. Foreman objected and asserted that the remark was improper because it suggested the jury was a part of the prosecution effort. The objection was sustained. Mr. Foreman's counsel sought a mistrial. The motion was denied.

■ The jury was instructed that the remarks of counsel are not evidence and that any remarks having no basis in evidence should be disregarded. A mistrial is an extreme remedy to be used only when it is determined that something has occurred that will undoubtedly deprive a party of a fair trial. A trial court has wide discretion when it comes to a motion for a mistrial. *See Heard v. State,* 322 Ark. 553, 910 S.W.2d 663 (1995); *Mills v. State,* 322 Ark. 647, 910 S.W.2d 682 (1995). Under these circumstances, we

hold the Trial Court did not abuse his discretion in refusing a mistrial.

### 7. Rule 4-3(h)

In accordance with Supreme Court Rule 4-3(h), the record has been reviewed for erroneous rulings prejudicial to Mr. Foreman, and none has been found.

Affirmed.