Anthony MAXFIELD *v.* STATE of Arkansas

CA CR 00-28                                           27 S.W.3d 449

Court of Appeals of Arkansas
Division III
Opinion delivered October 4, 2000

*Ben Seay*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Jeffrey A. Weber*, Ass't Att'y Gen., for appellee.

JOHN F. STROUD, JR., Judge. Anthony Maxfield was found guilty by a jury of rape, kidnapping, aggravated robbery, and breaking or entering. He was sentenced for these convictions to a total of forty-two years in the Arkansas Department of Correction. His sole point of appeal is that the trial court erred in denying his motion to suppress his custodial statement because it was not given

voluntarily. The basis of his appeal is that at his *Denno* hearing, the State did not produce as a witness or explain the absence of an officer who promised leniency to him. Appellant asks that the judgment and conviction be reversed and that his cause be remanded for a new trial. The State responds that this point is not preserved for appeal, or, in the alternative, that the trial court's denial of appellant's motion to suppress was harmless beyond a reasonable doubt. We find that the point was preserved for appeal, but we are unable to say that the denial of the motion to suppress was harmless beyond a reasonable doubt. We find further that this case must be remanded to the trial court for a new hearing on determining the voluntariness of appellant's confession, but that a new trial is not required at this point.

Appellant was questioned at the Hope Police Department by Officers Morris Irving and Hays McWharter on January 5, 1999. He was then nineteen years old, had experienced problems in school and been put back in ninth grade courses, and had quit school in the tenth grade to get his GED. He initialed and signed a *Miranda* form, and he then signed a statement of confession written by McWharter. In the statement, appellant admitted entering an unlocked van, lying down in the back until a young woman left a restaurant and started the vehicle, grabbing the woman's throat and holding a knife to it after she began driving, grabbing her pony tail, and directing her where to drive. He described his rape of the woman, committed while he wore a white mask and kept the knife in his hand. He stated that when he was finished, he told her that he was sorry and that she would never see him again, and he took $10 from her apron.

Appellant filed a motion to suppress the statement on the grounds that the statement was not voluntarily and freely made without hope of reward. At the *Denno* hearing on his motion, he testified to the following circumstances regarding the giving of his statement. Before the interrogating officers brought out the *Miranda* form, they tried to get him to cooperate. This lasted thirty minutes, at most. Irving, and definitely not McWharter, told appellant that they already had enough evidence to convict him without a confession, and that if he cooperated they would talk to the judge and the prosecuting attorney to see if they could get him twenty years with his sentences running concurrently. Based on what Irving told him about the twenty years, appellant decided to

cooperate about confessing; he signed the waiver of rights form at 11:15 p.m. and signed the statement at 12:16 a.m. There were no breaks in the hour-and-thirty-to-forty minutes of questioning, and McWharter was present the entire time except for stepping out for two or three minutes to get a soda. Appellant had not wanted the statement tape-recorded, so McWharter wrote out the statement that he signed.

McWharter testified at the *Denno* hearing that he was with appellant for the entire interview and was not aware of any time that appellant was alone with Irving. McWharter stated that he was certain that no indication was made to appellant that a specific sentence would be discussed with the prosecutor.

After the hearing and denial of the motion to suppress, appellant filed a motion for reconsideration. Appellant stated in his motion that Irving, a material witness to the taking of the statement, was not present at the hearing; that Irving had promised leniency to appellant; and that the promise had induced appellant to confess. No hearing was held on the motion, but a docket entry indicates that the motion was denied.

■ ■ The State contends that this appeal is barred because appellant did not object at the *Denno* hearing to Irving's absence. Appellant notes in his reply brief that the State's position is contrary to case law. When challenging a statement as involuntary, a defendant is not required to point out, in precise words, that a material witness was not called. *Smith v. State*, 254 Ark. 538, 494 S.W.2d 489 (1973). In *Smith v. State*, 256 Ark. 67, 68, 505 S.W.2d 504, 506 (1974), our supreme court explained:

> The burden of proving that a confession is voluntary is one which the State must assume when the admissibility of a confession is questioned on the grounds that it was coerced. Only by producing all material witnesses connected with the controverted confession can the State discharge this burden.

(*quoting People v. Armstrong*, 282 N.E.2d 712 (Ill. 1972)). A custodial statement is presumptively involuntary; it is the State's burden to prove by a preponderance of the evidence that a custodial statement was given voluntarily and was knowingly and intelligently made. *Knight v. State*, 62 Ark. App. 230, 971 S.W.2d 272 (1998). As a part of its burden, the State must produce at a *Denno* hearing all of the

persons who were witnesses to the taking of a statement or must explain their absence. *Foreman v. State*, 328 Ark. 583, 945 S.W.2d 926 (1997). When the necessary witnesses are not produced and no satisfactory explanation of their absence is forthcoming, evidence of the accused that his statement was involuntarily given stands uncontradicted. *Id.*

■ Here, we determine that by failing to produce or explain the absence from the *Denno* hearing of Officer Irving, who was a witness to the taking of appellant's custodial statement, the State failed to meet its burden of proving that appellant's statement was given voluntarily. This does not, however, end our review, for the admission of an "involuntary confession" is subject to a harmless-error analysis. *Riggs v. State*, 339 Ark. 111, 3 S.W.3d 305 (1999).

■ ■ The Supreme Court has directed the reviewing court to use extreme caution in subjecting an involuntary confession to the harmless-error analysis:

> A confession is like no other evidence. Indeed, "the defendant's own confession is probably the most probative and damaging evidence that can be admitted against him. ... [T]he admissions of a defendant come from the actor himself, the most knowledgeable and unimpeachable source of information about his past conduct. Certainly, confessions have profound impact on the jury, so much so that we may justifiably doubt its ability to put them out of mind even if told to do so." *Bruton v. United States*, 391 U.S., at 139–140 (WHITE, J., dissenting). See also *Cruz v. New York*, 481 U.S., at 195 (WHITE, J., dissenting) (citing *Bruton*). While some statements by a defendant may concern isolated aspects of the crime or may be incriminating only when linked to other evidence, a full confession in which the defendant discloses the motive for and means of the crime may tempt the jury to rely upon that evidence alone in reaching its decision. In the case of a coerced confession..., the risk that the confession is unreliable, coupled with the profound impact that the confession has upon the jury, requires a reviewing court to exercise extreme caution before determining that the admission of the confession at trial was harmless.

*Arizona v. Fulminante*, 499 U.S. 279, 296 (1991). In addition to following the analysis of *Fulminate*, under *Chapman v. California*, 386 U.S. 18 (1967), we are required to excise the confession and determine whether the remaining evidence shows beyond a reasonable

doubt that the error did not contribute to the verdict. *See Criddle v. State*, 338 Ark. 744, 1 S.W.3d 436 (1999).

Once appellant's confession is excised from the evidence in the present case, there remains other evidence introduced by the State at trial. The victim testified that her attacker ordered her to drive to a certain location and to perform sexual acts, that he inserted his penis into her anal area, and that she gave her money to him after he ordered her to do so; she also stated that he held a knife to her throat during these acts. She testified that he wore a mask similar to a "Jason" Halloween mask, never exposing his face to her. Forensic scientists from the state crime laboratory testified concerning a vaginal smear slide and swabs, and a rectal smear slide and swabs, which were among the contents of a rape assault kit in this case; and a piece of upholstery with a spot on it, taken from the victim's van. They testified that no semen or blood was detected on the slides or swabs, but that semen was found on the upholstery. In the opinion of the supervisor of the laboratory's DNA testing, the DNA sample from the upholstery came from appellant. Officer Steve Gulik, who had responded to a call about the alleged incident shortly after it occurred, testified that the victim reported that she had felt a sharp pain but, because she had never had sex before, was uncertain whether penetration actually occurred. Officer Irvin testified that six days after the reported crime, he found a Jason mask on the same block where appellant lived and about three blocks from the restaurant where the van had been parked. Appellant's girlfriend testified that a Jason mask belonging to her son had been in the home she shared with appellant, but that she could not remember seeing it since the date when the officer had found a mask; she also testified that she had found in appellant's clothing a medical card bearing the victim's name.

■ Thus, the evidence before the jury aside from the excised confession was the victim's testimony, DNA evidence, and testimony that a mask similar to the one used in the crimes was accessible to appellant. We do not review this evidence to determine whether it was sufficient to sustain the convictions against appellant; rather, the determination we must make is whether, beyond a reasonable doubt, the erroneously admitted confession and its description of the manner in which he committed these crimes did not contribute to the jury's verdict of guilty. We are unable to say that it did not so contribute.

■ The trial court's failure to suppress appellant's statement, however, does not in and of itself entitle appellant to a new trial. Instead, we employ only the "limited-remand procedure" to the trial court with instructions to hold a hearing and rule on the issue of the voluntariness of appellant's confession. *See Rankin v. State,* 329 Ark. 379, 948 S.W.2d 397 (1997); *Guinn v. State,* 27 Ark. App. 260, 771 S.W.2d 290 (1989) (citing *Jackson v. Denno,* 378 U.S. 368 (1964)). At this hearing, the State must produce Officer Irving or must explain his absence. A new trial should be ordered only if the trial court finds the confession to have been involuntary. *Guinn, supra.*

Remanded for a new *Denno* hearing.

PITTMAN and NEAL, JJ., agree.