

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CR-14-160

| | |
|---|---|
| JOEL RAYMOND RODRIGUEZ | **Opinion Delivered** November 19, 2014 |
| APPELLANT | APPEAL FROM THE SALINE COUNTY CIRCUIT COURT [NO. 63 CR-12-471] |
| V. | |
| STATE OF ARKANSAS | HONORABLE GARY ARNOLD, JUDGE |
| APPELLEE | AFFIRMED |

**DAVID M. GLOVER, Judge**

Joel Raymond Rodriguez was tried by a jury and found guilty of the offenses of aggravated assault, first-degree terroristic threatening, and second-degree domestic battering. He was sentenced to 600 months in the Arkansas Department of Correction. Rodriguez raises five points of appeal: 1) he was prejudiced when the trial court abused its discretion by allowing a witness to read a text message into evidence to refresh her recollection; 2) the trial court erred when it allowed the introduction of an inflammatory text message into evidence; 3) the trial court erred in denying his motion for mistrial based on a juror's knowledge that the appellant was in custody; 4) the trial court erred in denying his motion to dismiss charges; and 5) the trial court erred in denying his motion for directed verdict and new trial. We affirm.



*Background*

The charges against Rodriguez arose from an encounter between him and his girlfriend, Hannah Logan, on the night of August 8–9, 2012. Hannah testified that on the evening of August 8, 2012, she picked up Rodriguez from his parents' house and that they went several places. She said that after Rodriguez left his friend's house (she stayed in the car), his demeanor changed dramatically; that he was usually happy and kind hearted, but that he became very angry. She testified that she drove to her mother's house because her car was overheating, and she needed to put water in it. She said that she went into the house alone, but that Rodriguez subsequently burst into the house and cursed her; that they shoved each other; that he grabbed her throat; that he was "enraged"; and that she thought she was going to black out. She said that she threw a glass of water she had in her hand and hit him with the cast on her arm; that he was bleeding from his "mouth area"; and that he then pushed her face-down on the kitchen floor and collapsed on top of her. She testified that she felt a hard blow on her head; that she thought he hit her with a gun; that he then put the gun in her mouth; and that she did not see him pull the trigger, but she heard "clanging/clicking" on her teeth. She stated that they wrestled around on the floor; that he released her for a second; that she started cursing him, and he held her in a head-lock; that they made their way to her daughter's room; that he said, "Bitch, you don't think I'll kill you"; and that she thought it was very possible he was going to kill her.

She said the gun was a semi-automatic pistol. She thought the gun was loaded, but Rodriguez didn't make any actions that led her to believe that it was. She said that they had

both been drinking a little bit, and they had both taken a Xanax, but that Rodriguez did not appear to be intoxicated and she was not either. She said that this series of events in her mother's house, who was out of town, lasted about fifteen to twenty minutes and took place a little before midnight. Rodriguez left in her car (she gave him her keys); she cleaned herself and the house up; she left and went to her brother's house and then her mom's friend's house; and she called the police about two hours after the incident. She also called Rodriguez because she wanted her car back.

Hannah further testified that she and Rodriguez "texted" each other, prompting a long bench conference concerning Hannah being able to "refresh her memory" concerning a text she testified she received from Rodriguez and other texts that she had sent to him but that had been erased. The trial court allowed her to read the text message to the jury. She also stated that it was the last communication she had with Rodriguez and that she forwarded it to Tony Baugh, a detective who interviewed her the next day.

Hannah explained that Detective Baugh accompanied her in returning to her mother's house (who was still out of town); that she noticed a beer can in the yard, which was unusual; and that normally the front door is left unlocked and the back door locked, but it was just the opposite when they returned to the house. She got her car back. It was found a couple of miles from where Rodriguez's cousins and nieces lived. She identified several photo exhibits showing her injuries.

On cross-examination, Hannah repeated that, normally, Rodriguez was a happy, kind-hearted person; that she had known him for two years; and that their relationship was not

usually mentally or physically abusive. She stated that she gave Rodriguez the keys to her car and told him to leave; that she had deleted the texts other than the one she read to the jury; and that some of those deleted texts were from her and contained "heinous" language of her own. She corrected some of her statements to the police; stated that she did not want to be there testifying; and acknowledged that she was the one who brought the Xanax on the night of the incident.

*Discussion*

We first address a portion of Rodriguez's final point of appeal because it challenges the sufficiency of the evidence supporting his convictions for second-degree domestic battering, aggravated assault, and first-degree terroristic threatening.

An appellant's right to freedom from double jeopardy requires us to review the sufficiency of the evidence before we review any asserted trial errors. *Foshee v. State*, 2014 Ark. App. 315. The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* In reviewing the sufficiency of the evidence, we view it in a light most favorable to the State and consider only the evidence that supports the verdict. *Id.*

In addressing Rodriguez's sufficiency challenges, we must first determine if the arguments were properly preserved for our review. In order to understand why his challenges to the aggravated-assault and second-degree-domestic-battering charges were not properly preserved, it is necessary to put the arguments raised below in context.

4

Here, by amended information, Rodriguez was charged as a habitual offender with the offenses of attempted capital murder (two counts), terroristic threatening, aggravated assault, and intimidating a witness; however, the State proceeded to trial on the attempted-capital-murder counts and terroristic threatening only, nolle prossing the remaining charges. After the State rested its case in chief, Rodriguez challenged the sufficiency of the evidence supporting both counts of attempted capital murder and terroristic threatening, but his "motion to dismiss" was denied. Before Rodriguez began presenting his case, the State amended the charges against him to two counts of aggravated assault, second-degree domestic battering, and first-degree terroristic threatening. Rodriguez did not object to the amendments. He then presented his case, and at the close of the evidence, he moved for a directed verdict on the charges of second-degree domestic battering, aggravated assault, and first-degree terroristic threatening. The motion was denied.

In this rather unusual setting, it is clear that after the State rested its case, Rodriguez challenged the sufficiency of the evidence to the two original counts of attempted capital murder and terroristic threatening, but, once the charges were amended and before he presented his case, he did not challenge the amended charges of aggravated assault and second-degree domestic battering.

Rule 33.1 of the Arkansas Rules of Criminal Procedure provides in pertinent part:

> (a) In a jury trial, if a motion for directed verdict is to be made, it shall be made at the close of the evidence offered by the prosecution and at the close of all of the evidence. A motion for directed verdict shall state the specific grounds therefor.
> . . . .

5

SLIP OPINION

> (c) The failure of a defendant to challenge the sufficiency of the evidence at the times and in the manner required in subsection (a) . . . will constitute a waiver of any question pertaining to the sufficiency of the evidence to support the verdict or judgment.

Because there was no objection to the amendment of the charges, and Rodriguez did not challenge the sufficiency of the evidence supporting his convictions for aggravated assault and second-degree domestic battering after the State closed its case in chief and before he presented his own case, his challenges to those convictions were not preserved for our review.

Moreover, with respect to the first-degree-terroristic-threatening charge, the sufficiency argument made at trial focused more on rehashing evidentiary matters concerning the text message, which will be discussed *infra*, rather than arguing specifically why the evidence that was presented was not sufficient to support the charge. Even so, at the time of these events, a person committed first-degree terroristic threatening if, "with the purpose of terrorizing another person, the person threatens to cause death or serious physical injury or substantial property damage to another person[.]" Ark. Code Ann. § 5-13-301(a)(1)(A). The text message that Hannah read to the jury, which she testified was from Rodriguez, contained, for example, statements of "doing a 187 on you," which she explained stands for homicide; "[c]hopping" up her parents' house with bullets; and knocking her teeth out. Viewing the evidence in the light most favorable to the State, we hold that there was substantial evidence to support the conviction for first-degree terroristic threatening.

Returning to the points of appeal in the order that they were raised, Rodriguez's next two points contend that he was prejudiced when the trial court abused its discretion by allowing Hannah to read the text message into evidence to refresh her recollection and that

the trial court erred when it allowed the inflammatory text message to be introduced into evidence. For ease of discussion, we address these two points together because they both deal with the same text message, and many of the arguments overlap. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Holmes v. State*, 2014 Ark. App. 502, 441 S.W.3d 916. We find no basis for reversal concerning either point. We do agree with the State, however, that the more appropriate basis for allowing the text message was as an admission by a party opponent pursuant to Rule 801(d)(2) of the Arkansas Rules of Evidence, rather than to refresh Hannah's memory. *See Neal v. State*, 375 Ark. 389, 291 S.W.3d 160 (2009) (affirming where trial court reached the correct result, even if for a different reason).

Rule 801(d)(2) provides:

> (d) *Statements Which Are Not Hearsay.* A statement is not hearsay if:
>
> . . . .
>
> (2) *Admission By Party-opponent. The statement is offered against a party and is (i) his own statement, in either his individual or a representative capacity*, (ii) a statement of which he has manifested his adoption or belief in its truth, (iii) a statement by a person authorized by him to make a statement concerning the subject, (iv) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship, or (v) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

(Emphasis added.) Rodriguez's text message constitutes a party admission.

In his reply brief, Rodriguez argues that Rule 801(d)(2) is not applicable because the text message "was not being offered against the Appellant." He seems to mean that because it was read to the jury, instead of the writing marked as State's Exhibit 1 being introduced

7

into evidence, that it was not "offered" against him. We consider that to be a distinction without a difference under the circumstances of this case. Rodriguez's text message was read to the jury by Hannah and thereby offered against him, even though the writing itself was inexplicably never provided to the jury and made part of the record.

Rodriguez further contends that because the text message was not offered under 801(d)(2) at trial, he did not have the "opportunity to be heard on the authentication prong," and that it would be inappropriate for this court to analyze it under 801(d)(2). We disagree. Even though the discussion at trial focused on evidentiary rules other than 801(d)(2), it was always clear that the State took the position that the text was from Rodriguez. Hannah testified that the text was from Rodriguez, and Rodriguez offered no evidence disputing that assertion. Thus, even under the other evidentiary rules, authenticity was still at issue, and Rodriguez did not challenge the authenticity of the text.

Attempting a further demonstration of abused discretion, Rodriguez argues that he is a Hispanic male and the text contained racially derogatory comments about Hannah, a white female, and was read by her to a predominantly white jury. The argument was not developed below and therefore not preserved for our review. He also argues that the text was prejudicial because it was taken out of context and presented only one side of a two-sided conversation. In making the argument, he relies upon Rule 106 of the Arkansas Rules of Evidence, which provides:

> Whenever a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement which in fairness ought to be considered contemporaneously with it.

8

The rule is designed to allow the presentation of recorded or written statements in context, so as to avoid misleading the jury. Here, however, the trial court questioned Hannah about the existence of other text messages with Rodriguez. She explained that she had deleted them—that they no longer existed—and acknowledged that she, too, had said some "heinous" things and that the texts were written by both of them in anger. The trial court told Rodriguez that in the absence of the other texts, he would have to handle the situation by cross-examination. There is no indication that the State played any role in the deletions, and Rodriguez abandons any discovery-violation arguments. Rodriguez had the same access to all of the texts between him and Hannah, and the text that was read to the jury was the sole text that Hannah provided to the police and that helped form the basis for the charge of terroristic threatening. As much context as possible was provided to the jury in light of the fact that the other texts were deleted, and we find no abuse of the trial court's discretion in this respect.

Rodriguez next makes a glancing argument that because the text also contained derogatory comments directed toward a man named Barney, Hannah's friend, it constituted evidence of other bad acts that were not relevant and were prejudicial. We disagree because the comments directed toward Barney also supported the charge of terroristic threatening.

Rodriguez further argues that the State violated discovery rules by not providing him with a text message in Spanish from his own mother to Hannah. As noted by the State, the text was never mentioned to the jury nor introduced at trial. In a bench conference on the issue, the prosecutor explained that she did not plan to use it unless the mother testified and

then it would be used as rebuttal—not as part of the State's case in chief.  It never happened.

Moreover, the State informed the trial court at the bench conference that there was nothing

exculpatory in the text, and if anything it was inculpatory addressing the injuries sustained by

Hannah.  Rodriguez never asked the trial court to review the text itself and make its own

determination, and Rodriguez never sought to have the text proffered, so there is nothing for

this court to be able to review. He counters that because the mother's text was never provided

to him, there was no way he could proffer it.  We disagree.  He could have sought an in

camera determination from the trial court with the text proffered under cover.  Moreover,

we fail to see how Rodriguez was prejudiced because his mother's text was never used at trial.

Finally, Rodriguez argues that the photograph of the text was not the best evidence

of its contents.  We disagree.  The State presented an AT&T representative, who testified that

the company does not keep records of the content of text messages.  Hannah explained that

the texts had been deleted from her phone, and that the photograph of the text accurately

reflected the text message she received from Rodriguez.  Under these circumstances, the

photograph of the text was all there was, and Rodriguez had the opportunity to cross-

examine Hannah about it.

Rodriguez next contends that the trial court erred in denying his motion for a mistrial

based on the fact that, after trial, it was learned that a juror had seen him accompanied by an

officer outside the courthouse. We disagree.

A mistrial is a drastic remedy, and it is proper only where the error is beyond repair

and cannot be corrected by any other curative relief.  *Banks v. State*, 315 Ark. 666, 869

10

S.W.2d 700 (1994). The trial court has wide discretion in granting or denying a motion for mistrial, and its decision will not be disturbed except where there is an abuse of discretion or manifest prejudice to the complaining party. *Id.* Restraints are not per se prejudicial, and the defendant must affirmatively demonstrate prejudice. *Williams v. State*, 347 Ark. 728, 67 S.W.3d 548 (2002). We will not presume prejudice when there is nothing in the record to indicate what impression may have been made on the jurors or where the appellant did not offer any proof of prejudice. *Id.*

Here, there is not even a contention that Rodriguez was seen in restraints. Rather, after the verdicts were returned but before Rodriguez was sentenced, his counsel learned that one juror had seen Rodriguez being escorted into the courthouse by sheriff's deputies, and he also argued that there had been other instances where it was obvious that Rodriguez was in custody by the officers' proximity to him. The trial court conducted an in-chambers examination of the juror, asking about her observations. She acknowledged that she had seen him walking with the officers as she sat in her car that morning. She stated that she just assumed it was standard procedure. Defense counsel was allowed to question the juror, but he did not pursue inquiries about possible prejudice. We find no abuse of the trial court's discretion in denying Rodriguez's motion for a mistrial under the circumstances presented here.

Rodriguez next contends that the trial court erred in denying his motion to dismiss the charges because his rights against double jeopardy were violated when the trial court did not dismiss the charge of second-degree domestic battering. He seeks retrial on one count

11

of aggravated assault only. The basis of his argument is his contention that he was engaged in a continuous course of conduct, not separate offenses, and should not have been tried on separate offenses. That is, he contends that only one aggravated assault occurred because the acts all took place during the same episode. We disagree.

The doctrine against double jeopardy protects defendants from receiving multiple punishments for the same offense. *Dilday v. State*, 369 Ark. 1, 250 S.W.3d 217 (2007). Arkansas Code Annotated section 5-1-110(a)(5) provides in pertinent part:

> (a) When the same conduct of a defendant may establish the commission of more than one (1) offense, the defendant may be prosecuted for each such offense. However, the defendant may not be convicted of more than one (1) offense if:
>
> . . . .
>
> (5) The conduct constitutes an offense defined as a continuing course of conduct and the defendant's course of conduct was uninterrupted, unless the law provides that a specific period of the course of conduct constitutes a separate offense.

A continuing offense is a continuous act or series of acts that are begun by a single impulse and operated by an unintermittent force, and the test to determine whether a continuing offense is involved is whether either the individual acts or the course of action that they constitute are prohibited. *Halpaine v. State*, 2011 Ark. 517, 385 S.W.3d 838. If it is the individual acts that are prohibited, then each act is punishable separately. *Id.* If it is the course of action that is prohibited, then there can be only one penalty. *Id.* Where there is a single impulse, only one charge lies, but if there are separate impulses, separate charges lie even if all are part of a common stream of action. *Id.*

At trial, in defending against the motion to dismiss, the trial court asked the prosecutor to identify the acts constituting two aggravated assaults and the second-degree domestic battering. The prosecutor explained that there were actually three aggravated assaults: putting the gun in Hannah's mouth, putting the gun to the back of Hannah's head, and choking her, thereby restricting the air she could breathe. With respect to domestic battering, the prosecutor identified the injuries Hannah suffered from Rodriguez hitting her on her head with the gun while they were in a dating relationship. We agree that these are separate acts resulting from separate impulses, even though they happened during the same criminal episode. They constituted separate and distinct acts and the trial court did not err in denying the motion to dismiss.

We addressed the first portion of Rodriguez's final point of appeal, which challenged the sufficiency of the evidence supporting his convictions, at the outset of this opinion. In the remaining part of his final point, he contends that the trial court erred in denying his motion for new trial, which was filed after his trial and was based on his positions that the trial court erred in admitting the text message, erred in failing to grant a mistrial, and erred in refusing to dismiss charges because he was overcharged by the State. All of these arguments were raised and addressed in earlier points, and we found no merit in them. It is not necessary to address those arguments again here.

Affirmed.
VAUGHT and WOOD, JJ., agree.
*Willard Proctor, Jr., P.A.*, by: *Willard Proctor, Jr.*, for appellant.
*Dustin McDaniel*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.

SLIP OPINION