## Andre Deon McEWING *v.* STATE of Arkansas

CR 05-1366                                                    237 S.W.3d 43

Supreme Court of Arkansas
Opinion delivered June 1, 2006

*William R. Simpson, Jr.*, Public Defender, and *Lance Sullenberger*, Deputy Public Defender, by: *Erin Vinett*, Deputy Public Defender, for appellant.

*Mike Beebe*, Att'y Gen., by: *Misty Wilson Borkowski*, Ass't Att'y Gen., for appellee.

JIM HANNAH, Chief Justice. Appellant Andre Deon McEwing was charged with aggravated robbery, theft of property, and first-degree battery in connection with the assault of Floyd Ross and the subsequent theft of his vehicle. A Pulaski County jury found him guilty of all three charges, and McEwing was sentenced to a term of life imprisonment for aggravated robbery, forty years' imprisonment for theft of property, and forty years' imprisonment for first-degree battery as a habitual offender, with the sentences to run

concurrently. McEwing's sole point for reversal is that the circuit court abused its discretion in excluding one of his alibi witnesses from testifying at trial. As this is an appeal in which a term of life imprisonment has been imposed, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(2). We find no error and, accordingly, we affirm.

At trial, the State's central witness was the victim, Floyd Ross. Ross testified that on Christmas Eve of 2003, he went to the area of Arkansas Baptist College, in Little Rock, to find some firewood to buy. While in the vicinity of the college, Ross was stopped by a man he identified as McEwing, whom he had met the previous October at a college event. McEwing told Ross that he was having car trouble and needed help. According to Ross, McEwing told him that he was cold, and Ross let him sit in his car as he drove toward McEwing's van. Once inside Ross's vehicle, McEwing waved a friend over, and the friend got in the backseat of Ross's vehicle. Ross testified that he "got a gut feeling," looked in the backseat via the rearview mirror, and saw that McEwing's friend had a gun.

McEwing's friend fired a shot but missed Ross, breaking out Ross's driver's side window. McEwing then pushed Ross into the backseat and shot him in the buttocks. Ross told the jury that he was begging for his life, trying to get out of the back door of the vehicle, and struggling with the man in the backseat who was trying to keep him inside the vehicle.

Ross testified that he managed to get out of the vehicle and watched as McEwing drove it away. The van, which McEwing had claimed was broken down, then pulled in after Ross's vehicle and drove away after it. Ross ran to a nearby house and contacted the police, and paramedics took him to a hospital for treatment of his gunshot wound. On the night of the shooting, Ross was unable to identify McEwing by any name other than Big Dre. The next day, however, Ross gave McEwing's full name to Little Rock detectives. Ross testified that he eventually recovered his vehicle in Monticello, Arkansas.

At trial, McEwing sought to mount an alibi defense. On the morning of trial, he notified the State that he had two alibi witnesses: his mother, Annette McGee, and another woman named Janelle Young. Both women were expected to testify that McEwing was in Dermott at the time the alleged offense occurred in Little Rock. The State objected to allowing the witnesses to testify as follows:

DEPUTY PROSECUTING ATTORNEY: The other issue, your Honor, regards defense witnesses.

THE COURT: Okay.

DEPUTY PROSECUTING ATTORNEY: Apparently, Mr. Sullenberger found out about two witnesses on Friday and notified yesterday, which was approximately 24 hours before the trial. Then this morning, he notified us that one of those witnesses won't be testifying, but yet a new witness will testify. This is the — I believe, third trial setting. And the only reason that it's going today and not last Thursday, when there were no witnesses — and even at the Omnibus Hearing, when asked, there were no witnesses. First trial setting, no witnesses. Second trial setting, when he didn't show up on time, no witnesses. And now we're here the day of trial; we get a new witness. The day before trial we get a new witness. This is basically trial by ambush at this point, where we're stuck not being able to prepare for this. If it were — if the shoe were on the other foot and these were substantive witnesses, I don't think that the Court would allow us to introduce them and hold us to our burden of proof. And I just ask the same.

THE COURT: Mr. Sullenberger?

DEFENSE COUNSEL: This is a — what Mr. Finklestein is saying is true, your Honor. And Annette McGee is one of those. She is Mr. McEwing's mother. She is mentioned in the report as owning the vehicle that was allegedly used in this — this robbery. The other one, I was not made aware of until this morning. These witnesses are crucial for the defense, your Honor. If the State would like to take some time to interview those witnesses that would be fine with me, your Honor.

THE COURT: Who's the other witness? What's their —

DEFENSE COUNSEL: Her name is Janelle Young.

THE COURT: Well, what is she going to testify to?

DEFENSE COUNSEL: That — both of them will testify that Mr. McEwing was in Dermott at the time the alleged offense occurred.

THE COURT: Well, they're alibi witnesses.

DEFENSE COUNSEL: They are.

THE COURT: Why — why weren't they made available until today?

DEFENSE COUNSEL: I had asked — called and asked Mr. McEwing a couple of weeks ago to furnish me with a witness list or any witnesses that he would have. And I've had no contact with him until Friday —Thursday and Friday of last week.

DEPUTY PROSECUTING ATTORNEY: So if he shows up for trial last week on, I believe it was a Wednesday, with no witnesses. He comes here. We're ready — you know we're ready for trial but another case goes. And so he doesn't have any witnesses. He comes two and a half [sic] late for his jury trial on Thursday. Again, with no witnesses and gets what he wanted, which was he didn't want to go to trial that day. And now we're stuck with — okay, well now we have alibi's [sic] that, you know, in a case that happened I think it was Christmas Eve 2003. And lo and behold, you know, almost two years later we come up with alibi's [sic] on the eve of trial — or sorry, the day of trial with one of them. I just think it's unfair to the State to have to — you know, based on the defendant's conduct. I'm not saying Mr. Sullen-berger did anything wrong. And in fact, I'm saying it's the defendant who created this situation and now is trying to gain some benefit from it.

DEFENSE COUNSEL: Your Honor, Ms. McGee is men-tioned in the file and she was her [sic] last Thursday. She's been here every time, she tells me.

THE COURT: Okay. Well, what I'll do is this. I'll let the State talk to both the witnesses, Janelle — what is her last name?

DEFENSE COUNSEL: Young.

THE COURT: Young and Annette McGee. I'm not going to — if the State won't allow you all — if you all can't

prepare a response to the — to their testimony, I'm going to exclude Janelle Young. If McGee, Annette McGee is in the file, then I'll allow her to testify, but I'll exclude Janelle Young if the State doesn't — if they can't, because they may want to do her record or find out on that. It's just unfair. You can't do that. I won't allow it unless the State has had a chance to talk to the witness and if it feels that it can adequately do a cross examination then I'll allow it. But otherwise I'm not going to allow that witness to testify. All right.

Thus, the circuit court allowed the testimony of McEwing's mother because her name was contained in the State's file as having been associated with the case from the beginning. However, the circuit court's ruling on Janelle Young was postponed until later, and depended on the State's ability to prepare a cross-examination of Young.

This issue of Young's testimony was taken up again at the close of the State's case, at which time the circuit court excluded her, as follows:

DEFENSE COUNSEL: The witness — my other witness?

THE COURT: Did you guys have a chance to talk to the other witness?

DEPUTY PROSECUTING ATTORNEY: Your Honor, we've had so many problems getting our own witnesses here.

THE COURT: Okay. All right. I'll allow the one witness, the mother.

DEFENSE COUNSEL: Okay. For the record, I would like to state that I think, you know, they could've called and checked or had their office in the five hours, four hours that we've been here and call ACIC at least and check and see if she had any record or anything like that.

THE COURT: All right.

Matters pertaining to the admissibility of evidence are left to the sound discretion of the circuit court, and we will not reverse such a ruling absent an abuse of that discretion. *See, e.g., Bell v. State*, 334 Ark. 285, 973 S.W.2d 806 (1998); *Bailey v. State*, 334

Ark. 43, 972 S.W.2d 239 (1998). Nor will we reverse absent a showing of prejudice, as prejudice is not presumed. *Hill v. State*, 337 Ark. 219, 988 S.W.2d 487 (1999). Here, the circuit court excluded the testimony of Young based upon the defense's failure to disclose the name of the witness until the morning of trial. Ark. R. Crim. P. 18.3 provides the applicable discovery rule in criminal cases:

> Subject to constitutional limitations, the prosecuting attorney shall, upon request, be informed as soon as practicable before trial of the nature of any defense which defense counsel intends to use at trial and the names and addresses of persons whom defense counsel intends to call as witnesses in support thereof.

The State moved for discovery of defense witnesses on May 5, 2005. However, McEwing did not disclose the two alibi witnesses until the morning of trial, on August 23, 2005. Sanctions by the circuit court for failure to adhere to discovery rules include granting a continuance, excluding the evidence, or ordering the discovery. Ark. R. Crim. P. 19.7; *see also Williams v. State*, 338 Ark. 178, 992 S.W.2d 89 (1999).

In the instant case, the circuit court excluded Young's testimony because it determined that the State was unable to adequately prepare a response to her testimony. McEwing contends that the State conducted a competent cross-examination of McEwing's mother without prior notice of her status as a witness. And, further, McEwing contends that the State had several hours in which to use its considerable investigatory and support-staff resources to look into the criminal history and general background of Young. Thus, McEwing submits that the late notice of Young as a possible witness should not have been a bar to her testimony. We disagree.

As noted in the testimony above, the circuit court allowed McEwing's mother to testify because her name was disclosed in the case file. Furthermore, McEwing's argument that Young should have been allowed to testify because the State had several hours in which to look into her background ignores the fact that the circuit court stated that it would not allow Young to testify unless the State had a chance to talk to her and adequately prepare a cross-examination. The deputy prosecuting attorney stated that he did not have an opportunity to speak with Young in the hours prior to trial. This court has noted that discovery in criminal cases,

within constitutional limitations, must be a two-way street. *Mitchell v. State*, 306 Ark. 464, 816 S.W.2d 566 (1991) (citing *Weaver v. State*, 290 Ark. 556, 720 S.W.2d 905 (1986)). This interpretation promotes fairness by allowing both sides the opportunity to full pretrial preparation, preventing surprise at trial, and avoiding unnecessary delays during the trial. *Mitchell, supra* (citing *Weaver, supra*). Here, the circuit court excluded Young because it determined that it was unfair to the State to allow her to testify. The circuit court did not abuse its discretion.

■ Moreover, as noted by the State, McEwing failed to demonstrate that he was prejudiced by not being allowed to call Young as an alibi witness. Although McEwing claims that Young, like McGee, would testify that McEwing was in Dermott on Christmas Eve in 2003, the substance of Young's testimony is not evident from the record as McEwing failed to proffer her testimony. This court has held that a proffer of excluded testimony is necessary in order to determine whether an appellant has suffered prejudice. *See, e.g., Huddleston v. State*, 339 Ark. 266, 5 S.W.3d 46 (1999) (citing *McGehee v. State*, 338 Ark. 152, 992 S.W.2d 110 (1999)). Nevertheless, McEwing argues that in this case, a proffer was unnecessary because the record already reveals that Young was going to testify to his alibi. McEwing contends that the exclusion of Young's testimony caused prejudice to his case, and that this is apparent without a proffer. In support of this proposition, McEwing states that this case was all about credibility, and that Young would have perhaps been more credible in the content of her testimony. He also argues that, in any event, what is less speculative is that *any* witness other than a criminal defendant's mother would have had less perceived or actual bias than the mother. The problem with this argument, which is illustrated by the language McEwing uses to make it, is that it is based purely on speculation. Although the record reveals that McEwing expected Young to provide an alibi in her testimony, without the proffer, we would be forced to speculate if we were to presume prejudice and reverse on this basis. This we will not do.

In sum, because McEwing failed to disclose Young as a defense witness until the day of trial, the circuit court did not abuse its discretion by excluding her as a witness. Furthermore, McEwing failed to proffer her testimony for appellate review or to otherwise show prejudice from the exclusion. In compliance with Ark. Sup. Ct. R. 4-3(h), the record has been examined for all

objections, motions, and requests made by either party that were decided adversely to the appellant, and no prejudicial error has been found.

Affirmed.