375 Ark. 389

**Howard H. NEAL, Jr., Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CR 08–859.**

Supreme Court of Arkansas.

Jan. 22, 2009.

Dustin McDaniel, Att'y Gen., by: Brad Newman, Ass't Att'y Gen., for appellee.

DONALD L. CORBIN, Justice.

Appellant Howard H. Neal, Jr., appeals his conviction for capital murder and kidnapping in the Pulaski County Circuit Court. Appellant's sole point on appeal is that the trial court abused its discretion in refusing to allow a witness to testify on the basis that Appellant failed to disclose in a timely manner to the State that the witness would be testifying. As Appellant was sentenced to a term of life imprisonment, our jurisdiction is pursuant to Ark. Sup.Ct. R. 1–2(a)(1). We affirm.

As Appellant does not challenge the sufficiency of the evidence supporting his conviction, a brief recitation of the facts will suffice. On October 23, 2005, Jacquelyn Polk left her five-year-old daughter, Jasmine Peoples, at the home of Polk's friend, Shavonda Perry. Polk was taking Perry to visit a relative in a nursing home, while Ronald Redden and others stayed with Jasmine and another child. While Jasmine was asleep in the front room, and the second child was asleep in a bedroom, Appellant walked in the front door of the apartment and exited out the back door, where he spent about fifteen minutes wandering around the backyard, talking to himself. Appellant then reentered the apartment stating, " 'I want all you M–F– ers to get out of my house.' " He then told Redden, " 'I'm going to kill every last one of y'all, and I'm going to start with your ass.' " Appellant then attacked Redden, stabbing him in the neck. Redden and the others fled the apartment, inadvertently leaving behind the two children.

The Jacksonville Police Department was called to the scene, and by the time officers arrived, Appellant had barricaded himself in the apartment. Sergeant Chris

William R. Simpson, Jr., Public Defender, Kent C. Krause, Deputy Public Defender, and Bret Qualls, Deputy Public Defender, by: Clint Miller, Deputy Public Defender, Little Rock, for appellant.

Burrough attempted to make contact with Appellant. He tried to convince Appellant to release the two children, but Appellant refused to do so. Because the apartment's front door was blocked by furniture, the department's entry team, a group of officers specifically trained in making entry into high-risk situations, was called. The entry team ultimately accessed the apartment through the back door and took Appellant into custody. Captain Kenny Boyd, a member of the entry team, began searching for the two children. After moving an overturned couch and television set, Captain Boyd discovered a child's body lying face down underneath the furniture. The child, who also had an extension cord around her neck, was later identified as Jasmine. The second child was found unharmed. An autopsy of Jasmine revealed numerous blunt-force and sharp-force injuries, but the ultimate cause of her death was compressional asphyxia, which was consistent with a heavy object or objects being placed on top of her chest.

Appellant was charged with capital murder and kidnapping.[1] He was tried before a jury, convicted and sentenced to life imprisonment without the possibility of parole on the charge of capital murder and twenty-two years' imprisonment on the charge of kidnapping, with the sentences to be served concurrently. This appeal followed.

As his sole point on appeal, Appellant argues that the trial court abused its discretion in refusing to allow a witness, Melody Perry, to testify on behalf of the defense at trial. Appellant concedes that he violated Ark. R.Crim. P. 18.3, in that Ms. Perry's name was not provided to the State in a timely manner. He argues, however, that the sanction for such a violation is left to the discretion of the trial court, and here the trial court abused that discretion by denying Appellant's request that Ms. Perry be allowed to testify. In support of this contention, Appellant avers that there was no evidence that he deliberately violated Rule 18.3, as he learned of Ms. Perry's testimony the morning of trial. Moreover, Appellant argues it was an abuse of discretion because (1) Ms. Perry was the only known witness who could cast doubt on the State's theory of the case; (2) the State would not have been surprised by Ms. Perry's testimony as they cross-examined her during the defense proffer of her as a witness; (3) the State could have easily rebutted Ms. Perry's causation testimony; and (4) it was for the jury, not the judge, to decide if Ms. Perry's testimony was credible.

The State counters that no mention was ever made of Rule 18.3 at trial. The State objected to Ms. Perry testifying on the basis that she was not named as a witness during voir dire and that the State had not subpoenaed witnesses who could rebut Ms. Perry's testimony, as there was no indication that the entry into the apartment would be an issue at trial. The State contends therefore that it was within the trial court's discretion to preclude Ms. Perry from testifying. As to Appellant's contention that the trial court abused its discretion in judging Ms. Perry's credibility, the State argues that this court can affirm the trial court's ruling for any reason. Finally, the State avers that Appellant cannot demonstrate prejudice resulting from the trial court's ruling, as he all but concedes that Ms. Perry's testimony was not to be believed.

 Matters pertaining to the admissibility of evidence are left to the sound discretion of the trial court, and we will

---

1. Appellant was also charged with battery in the first degree relating to his attack on Red-

den, but this charge was later dismissed upon motion by the State.

not reverse such a ruling absent an abuse of that discretion. *Springs v. State*, 368 Ark. 256, 244 S.W.3d 683 (2006); *McEwing v. State*, 366 Ark. 456, 237 S.W.3d 43 (2006). Furthermore, this court will not reverse absent a showing of prejudice, as prejudice is not presumed. *Id.*

■ In the present case, after the jury was selected, but prior to any opening statements, Appellant's counsel notified the trial court and the State that it had just learned of a witness with potentially exculpatory information. Specifically, Melody Perry, who had originally been approached by an investigator for the defense regarding any knowledge she might have of the location of another potential witness, came forward and notified Appellant's counsel that she was present at the time that officers from the Jacksonville Police Department entered the apartment through the front door, pushing over the furniture that had been piled against the front door. Appellant requested that he be allowed to call Perry as a defense witness. The State objected, arguing that the jury had already been seated and those members were selected based on whether they knew anyone involved with the case and that it had based its witness list on the announced witnesses. The trial court announced that it was taking the matter under advisement.

At the end of the first day of trial, Appellant was allowed to proffer Perry as a witness. Perry stated that she approached defense counsel and stated that she was standing in front of the apartment during the standoff and could see inside through a slit in the curtain. Inside she saw furniture barricading the front door. Perry stated that after about an hour or an hour-and-a-half, police "started barging in the front door and the back door." Upon cross-examination, Perry admitted that Appellant was her first cousin. At the conclusion of Perry's proffered testimony, the trial court ruled that it was not going to allow her to testify at trial since she had come forward at the last minute and had no credibility.

■ Under Rule 18.3,

[s]ubject to constitutional limitations, the prosecuting attorney shall, upon request, be informed as soon as practicable before trial of the nature of any defense which defense counsel intends to use at trial and the names and addresses of persons whom defense counsel intends to call as witnesses in support thereof.

Discovery in criminal cases, within constitutional limitations, must be a two-way street. *See McEwing*, 366 Ark. 456, 237 S.W.3d 43. This interpretation promotes fairness by allowing both sides the opportunity for full pretrial preparation, preventing surprise at trial, and avoiding unnecessary delays at trial. *Id.* In *McEwing*, this court held that a trial court did not abuse its discretion in prohibiting an alibi witness from testifying on behalf of the appellant when the appellant attempted to call the witness the morning of trial. In so ruling, this court stated that the trial court's decision to exclude the witness was based on a determination that it would be unfair to the State to allow the witness when the appellant sought to call her the morning of trial. *Id.*

■ While *McEwing* is distinguishable on the basis that there was a blatant violation of Rule 18.3 involved there, the underlying principle that it would be unfair to the State under Rule 18.3 to allow a witness who comes forward the morning of trial to testify is the same in both cases. Even though in the present case it is clear that Appellant was unaware of Ms. Perry and her potential testimony, we still cannot say that the trial court abused its discre-

tion in excluding her as a witness. While the trial court improperly ruled on Ms. Perry's credibility, as credibility matters are within the province of the jury, *see, e.g., Brown v. State,* 374 Ark. 341, 288 S.W.3d 226 (2008), this court can affirm the trial court if it reached the right result even for the wrong reason. *See Jarrett v. State,* 371 Ark. 100, 263 S.W.3d 538 (2007). Accordingly, there is no merit to Appellant's argument on appeal.

Affirmed.