
# ARKANSAS COURT OF APPEALS

DIVISION I

**No.** CR-16-518

| | |
|---|---|
| | **Opinion Delivered** January 25, 2017 |
| ANDREA GISELLE MOORE<br>APPELLANT | APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, GREENWOOD DISTRICT [NO. 66GCR-14-235] |
| V. | |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE JAMES O. COX, JUDGE<br><br>AFFIRMED |

## LARRY D. VAUGHT, Judge

Appellant Andrea Giselle Moore appeals her conviction by a Sebastian County jury of aggravated assault.[1] Her only argument on appeal is that the circuit court erred in excluding the testimony of an undisclosed expert witness who she claimed was necessary for rebuttal purposes. We affirm.

The testimony at trial revealed that on October 24, 2014, Mike Gibbs and John Greb noticed that their neighbors' dogs were loose. These dogs belonged to Moore and Michael Turner and were known to be dangerous. Mrs. Greb called 911 to report that the dogs were loose while Gibbs and Greb drove up the road to warn another neighborhood family with young children to stay indoors until the dogs were contained. The two men testified that they then drove back toward Moore and Turner's home and saw another neighbor, Kathy

---

[1]Moore was previously convicted but was granted a new trial. This appeal follows her second conviction.

Johanson, pull into Turner and Moore's driveway and honk repeatedly, yelling that the dogs were loose. Gibbs and Greb yelled for Johanson not to get out of her vehicle because the dogs were nearby and would bite.

It is undisputed that, at that point, Mike Turner came out of the house, attempted to corral the dogs, and was bitten on the hand. Moore also came out. Johanson left but testified that she heard Moore shouting for Gibbs and Greb to get off her property.[2] It is undisputed that when she came outside, Moore was carrying a .38-caliber revolver in a holster. Gibbs and Greb testified that Moore unholstered the gun and pointed it at them. Moore testified that she never unholstered the gun and never pointed it at anyone. Greb called his wife and told her Moore had a gun and to call 911 and report the gun, which she did. Gibbs used his cell phone to take pictures of Moore on the edge of the road holding the gun in her hand but not pointing it at anyone. These photographs were introduced into evidence.

Officer Edwin Creekmore with the Sebastian County Sheriff's Office testified that he was dispatched to the Moore/Turner home in response to a call about the dogs. As he was arriving, dispatch informed him that the call had changed to a report of a female suspect with a gun. He testified that, as he approached the home, he could see Moore walking back toward her property from the street with what appeared to be a gun in her hand. He ordered her to come out with her hands up, which she did. She did not have a firearm at that time but told Creekmore where she had put it. He located the gun, which was a .38 revolver. It was loaded with four rounds of ball ammunition and one hollow-point round. He unloaded the weapon

---

[2]Gibbs, Greb, and Johanson all testified that the men were not on the Moore/Turner property but remained in the road. Johanson testified that Moore and Turner believed the road to be part of their property.

and secured it. Creekmore testified that Moore described the verbal altercation with Gibbs and Greb. He testified that, at no point during their interaction that day did Moore or Turner say anything about Turner being hit by a vehicle. Creekmore testified that he spoke to Gibbs, Greb, Johanson, Moore, and Turner. Gibbs showed him the photographs of Moore holding the gun. The gun and ammunition were entered into evidence, and Creekmore testified that, even holstered, the gun was capable of being fired. On cross examination, Creekmore admitted that he may have been mistaken about how far away he was when, while driving up to the house, he saw Moore with the gun. He also stated that approximately thirty minutes elapsed between the timing of the original 911 call about the dogs and when he secured the scene.

Debbie Roberts and Ashley Ritter testified about their involvement in receiving the 911 calls and dispatching officers. Their accounts matched Creekmore's timeline of events.

Moore testified that she had brought a gun outside when Turner had gotten into a verbal altercation with Gibbs and Greb over the dogs being loose. However, she claimed that the men had yelled profanities at her and had backed into Turner with their vehicle, hitting him and causing him to fall to the ground. Moore's testimony matched Gibbs's and Greb's accounts that the altercation lasted no more than a few minutes. She denied ever pointing the gun at anyone. She testified that although he did not seek medical attention immediately, Turner went to the doctor a few days later.

Moore's attorney then recalled Gibbs to testify and asked him about timestamps on the cell-phone photographs of Moore holding the gun. Gibbs testified that the timestamps were 1:19 and 1:20 p.m., but the clock may have been set wrong on his cell phone at the time. He stated that the timestamps were inaccurate.

Moore's attorney then attempted to call a witness identified as Mr. Calen. He was described as an expert, although it is not clear what kind of expert. The State objected based on the fact that (1) Calen had not been disclosed as an expert witness prior to trial and (2) he had been in the courtroom during the entire trial despite the court's invocation of "the rule." Moore's attorney argued that Calen was a rebuttal witness, made necessary by Gibbs's testimony that the timestamps on the photographs were inaccurate. The court excluded Calen's testimony. Moore's attorney did not provide a proffer for what Calen's testimony would have been. Moore rested her defense and was convicted by the jury. This timely appeal followed.

Moore's sole point on appeal is that the circuit court erred in excluding Calen's expert testimony for the purposes of rebutting Gibbs's assertion that the timestamps on the photographs were incorrect. Matters pertaining to the admissibility of evidence are left to the sound discretion of the trial court, and we will not reverse absent an abuse of discretion. *See Washington v. State*, 2010 Ark. App. 596, at 8, 377 S.W.3d 518, 522. Nor will this court reverse absent a showing of prejudice, as prejudice is not presumed. *Id.* Arkansas Rule of Criminal Procedure Rule 18.3 (2015) provides that,

> [s]ubject to constitutional limitations, the prosecuting attorney shall, upon request, be informed as soon as practicable before trial of the nature of any defense which defense counsel intends to use at trial and the names and addresses of persons whom defense counsel intends to call as witnesses in support thereof.

If a defendant fails to adhere to the discovery rules, then the circuit court can impose sanctions by granting a continuance, excluding the evidence, or ordering the discovery. Ark. R. Crim. P. 19.7 (2015). On the other hand, a party is not required to disclose rebuttal witnesses during discovery. *See, e.g.*, *Kincannon v. State*, 85 Ark. App. 297, 303, 151 S.W.3d 8, 12 (2004). Genuine

4

rebuttal evidence consists of evidence offered in reply to new matters and must be responsive to that which is presented by the opposing party. *See, e.g.*, *Hajek-McClure v. State*, 2014 Ark. App. 690, at 6, 450 S.W.3d 259, 263.

Moore's challenge to the exclusion of Calen's testimony fails for two reasons. First, the proposed testimony would not have qualified as rebuttal evidence because it was being presented to rebut testimony elicited by Moore, not the State. In *Kincannon*, we reversed a trial court's admission of purported rebuttal testimony because the State had used it to rebut testimony it had elicited. This limitation is necessary to prevent a party from circumventing the disclosure requirements by creating its own need for rebuttal testimony.

Additionally, we will not reverse absent a showing of prejudice, which Moore cannot establish. First, her counsel failed to proffer Calen's testimony, so we cannot evaluate the impact of its exclusion. *See, e.g.*, *McEwing v. State*, 366 Ark. 456, 462, 237 S.W.3d 43, 47–48 (2006) ("McEwing failed to proffer her testimony for appellate review or to otherwise show prejudice from the exclusion" of her witness.). While Moore claims in her brief that it is clear that Calen would have testified to the accuracy of the time stamps, the record is silent on this point. Counsel never provided any description of the alleged "expert" testimony and failed to make the necessary proffer.

Even if we assume that Calen would have testified to the authenticity of the timestamps, as Moore argues, the exclusion of such testimony was not prejudicial because the exact timing of the events is not material. Moore admitted holding a gun outside her home while she and Turner had a verbal altercation with Gibbs and Greb, and her testimony about the general timeline of those events matched that of the other witnesses. Creekmore testified

that he saw Moore holding the gun and then recovered it. The gun and ammunition were entered into evidence. There was, therefore, no dispute on these points. The only real points of contention were whether Moore had aimed the gun at anyone and whether Gibbs and Greb had hit Turner with their truck. The timestamps on the photographs depicting Moore standing near the road holding a gun (which she admitted doing) were not material to those two disputed issues. Therefore, Moore cannot demonstrate prejudice from the exclusion of Calen's testimony.

Affirmed.

VIRDEN and HIXSON, JJ., agree.

*Danielson Law Firm, PLLC*, by: *Kyle Lippard*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brooke Jackson Gasaway*, Ass't Att'y Gen., for appellee.