Cite as 2021 Ark. App. 338

# ARKANSAS COURT OF APPEALS
DIVISION IV
No. CR–19–249

| | |
|---|---|
| JAMES M. BOHANAN<br><div align="right">APPELLANT</div><br>V.<br><br>STATE OF ARKANSAS<br><div align="right">APPELLEE</div> | **Opinion Delivered** September 22, 2021<br><br>APPEAL FROM THE CONWAY COUNTY CIRCUIT COURT<br>[NO. 15CR-18-22]<br><br>HONORABLE JERRY RAMEY, JUDGE<br><br>AFFIRMED |

**BRANDON J. HARRISON, Chief Judge**

Under *Faretta v. California*, 422 U.S. 806 (1975), a criminal defendant's assertion of his right to self-representation must be clear and unequivocal. If his request is equivocal, the circuit court does not need to respond or to conduct a hearing because there has been no clear indication of the defendant's desire to waive the right to counsel. This case essentially concerns whether James Bohanan unequivocally invoked his right to self-representation on the day he was tried before a jury. We conclude that he did not clearly invoke this right and therefore affirm his convictions.

In December 2017, Arkansas State Trooper Dustin Linquist pulled James Bohanan over for having a cracked windshield on his pickup truck. There was an outstanding warrant for Bohanan's arrest. Officer Linquist searched Bohanan's truck, found several guns and ammunition, and arrested Bohanan at the scene. The State ultimately charged Bohanan

with being a felon in possession of a firearm in violation of Ark. Code Ann. § 5-73-103 (Supp. 2021).

In July 2018, Bohanan's public defender, John R. Irwin, filed a written motion asking the circuit court to relieve him as Bohanan's appointed counsel. Because of a conflict, Irwin asked the court to appoint attorney Robert M. Jeffrey as substitute counsel. Although there is no written order appointing him as counsel, Mr. Jeffrey appeared as Bohanan's lawyer when the case was tried to a jury on 22 August 2018.

Before the jury trial began on August 22, the circuit court convened a pretrial hearing on several issues. One of them was Bohanan's dissatisfaction with his attorney's performance. Bohanan said that he had given his lawyer a list of people to call, including some investigators who were state employees and who would be willing to testify on his behalf, but that Mr. Jeffrey had only called "two at the bottom of the list." He argued that Mr. Jeffrey was "not prepared" and that his lawyer had chosen to pick "the weakest" witnesses. Bohanan told the circuit court that his court-appointed attorney "ha[d] no intention of trying to represent me to the best of his ability. There is no way with what we have got here today that the jury is going to find me innocent. There is no way at all."

Mr. Jeffrey responded to Bohanan's allegations and stated why he could not do what Bohanan wanted—concluding that he had a "totally antagonistic client." Mr. Jeffrey told the court that he would have moved for a continuance, but he did not have a basis for one.

The circuit court affirmed that it wanted the trial process to be fair to Bohanan, that Bohanan had a right to confront witnesses, that there had to be decorum in the courtroom,

and that Bohanan could not be disruptive to the trial process. Bohanan retorted that he was

"not going to be at this trial" and was "totally unsatisfied with [Mr. Jeffrey's] representation."

The following colloquy occurred next:

CIRCUIT COURT: I'm going to be blunt with you and I expect you to be blunt with Me. We're fixing to go in there and impanel this jury. Are you going to walk in there and sit at the table by your attorney, or not? I need to know, "yes" or "no."

BOHANAN: Well, I could elaborate on that just a little.

CIRCUIT COURT: I need a "yes" or "no."

BOHANAN: No, I am not. *I'm not going to be involved with anything to do with it*, because it is not a fair trial. There is no way it can be . . . They're going to convict me, so I'm not going in there, yes. [Emphasis added.]

CIRCUIT COURT: I can have you carried in there. There is case law on that. People have been carried in there and they can be shackled.

. . . .

BOHANAN: I'll walk in there and have a seat.

After the jury panel had been selected for the trial, Mr. Jeffrey approached the court,

and the following colloquy occurred outside the hearing of the jury panel:

MR. JEFFREY: My client handed me this note.

CIRCUIT COURT: Did you want to make a proffer of this?

MR. JEFFREY: I just told him I would bring this to You.

CIRCUIT COURT: All right. Let Me read this for the record, the Court has been provided with a handwritten note, from the Defendant, through his attorney, which says, "before you approach the jury I

3

would like to dismiss you as my attorney. Do you bring that before the Court or do I?"

The jury has already been impaneled, and I have already told the Defendant that *I am not going to release you as the attorney*. [Emphasis added.]

In other words, the circuit court denied Bohanan's request to fire his public defender.

During the State's case-in-chief, Officer Linquist testified he found a semiautomatic DPMS AR-platform rifle under a blanket strewn across the front seat of Bohanan's pickup truck. The officer also recovered a Hi-Point 9mm carbine rifle, a Glock model 2145 semiautomatic pistol, a Taurus Judge .410-caliber revolver, ammunition, and several magazines. Bohanan's prior felony convictions were introduced as evidence against him. The State rested its case, and Mr. Jeffrey moved for a directed verdict, which was denied.

After a recess of the proceedings, the circuit court reminded Bohanan that he did not have to testify. Bohanan, however, chose to testify, and the case proceeded against him with Jeffrey remaining as defense counsel. As stated in our previous opinion,[1] Bohanan's first sentence during his testimony was: "Your Honor, I dismissed my counsel earlier today." The court then said, "We are going to go on with testimony regarding the case. If you would please answer [his] questions." Mr. Jeffrey tried to elicit some factual responses from Bohanan and then said, "Would you rather I let you say what you want to say without questioning?" Bohanan replied, in part, "I don't want you at all."

After some discord among Bohanan, the circuit court, and the prosecuting attorney, Bohanan testified without Mr. Jeffrey asking any questions. Bohanan told the jury that he

---

[1]We previously ordered rebriefing in *Bohanan v. State*, 2020 Ark. App. 423, and *Bohanan v. State*, 2020 Ark. App. 11.

4

was convicted of a felony in 1993 and that he had been stopped with three pistols in the car in the past. He also said that Officer Linquist was a "real good guy" and that he was not "disputing any of the facts" but that there were "extenuating circumstances that anybody that might be in the same situation as me, would have a good reason to have a weapon." He explained that his "attorney chose not to pursue the matter" and said that the only thing Mr. Jeffrey had done was to speak "with one person on the phone two days ago and that was my girlfriend." Bohanan said that Mr. Jeffrey was totally unprepared for the trial. Bohanan concluded his direct testimony by stating, "You know, I'm not saying I'm not guilty, but I've got extremely good reasons why."

On cross-examination by the prosecuting attorney, Bohanan admitted he knew that because he is a felon, he was not allowed to carry a firearm and that the terms of his suspended sentence also prevented him from possessing a gun. After the prosecuting attorney completed his cross-examination, Bohanan began to testify on his own again. He told the jury that he was going to sell some of the guns so that he would have some Christmas money, that he was going to give his son "at least two of them" for his birthday, and that he had trouble with death threats against him "and everything in relation with that." Once Bohanan stopped testifying, Jeffrey renewed a motion for a directed verdict, which was again denied.

In closing arguments, the prosecuting attorney stated that while he is an ardent supporter of the Second Amendment, the right to bear arms is not absolute. He argued that Bohanan had lost his right to possess a firearm as a result of his conduct and that he had violated the law. After hearing this, Mr. Jeffrey waived a closing argument. Bohanan

immediately interjected and asked the court if he could "say something to the jury." The court allowed Bohanan to make a brief argument to the jury, during which Bohanan reminded the jury that he was guilty and that his lawyer had "never even bothered to call" his witnesses. Bohanan asked the jury to "put yourselves in my situation, even though you don't really know what that is."

After deliberating for approximately twenty minutes, the jury convicted Bohanan of four counts of possessing a firearm as a felon and recommended that he be sentenced to ten years' imprisonment concurrently on each count, and the circuit court imposed this punishment. Bohanan has filed a timely notice of appeal from the sentencing order.

The Sixth Amendment's guarantee of the assistance of counsel, applicable to the states through the Fourteenth Amendment, is unusual among constitutional rights because it is also implicitly a guarantee of its opposite, the right to refuse the assistance of counsel. *See Faretta v. California*, 422 U.S. 806, 819 (1975). The criminal process requires a defendant to make a choice between these two mutually exclusive constitutional rights. The right to the assistance of counsel is automatic; assuming the right is not waived. *United States v. Wade*, 388 U.S. 218, 223–27 (1967). Assistance must be made available at critical stages of a criminal prosecution, whether or not the defendant has requested it. *Carnley v. Cochran*, 369 U.S. 506, 513 (1962). To exercise the right to self-representation, on the other hand, a criminal defendant must negotiate a number of procedural obstacles. One of these

procedural obstacles is that the defendant's request to proceed without counsel must be clear and unequivocal.[2] *Faretta*, *supra*.

Bohanan argues that there were three instances when he clearly invoked his right to self-representation: (1) when he gave the note to his attorney and the court denied his request to fire counsel; (2) when he testified in his own defense that "I dismissed my counsel earlier today"; and (3) when he asked, and the court granted, his request to make his own closing argument to the jury. The State disagrees; it contends that there is "no indication" on this record that Bohanan made an unequivocal request to waive his right to counsel and represent himself.

On this record, it was apparent that Bohanan became disgruntled with his lawyer's pretrial performance and tried to fire him. Bohanan also tried to delay the start of his trial by refusing to go into the courtroom after he realized that he would have to proceed with Mr. Jeffrey as his lawyer. Additionally, during the trial, Bohanan refused to cooperate with Mr. Jeffrey's questioning of him as a witness on direct examination; he complained to the jury about his lawyer; and he even went so far as to make his own closing argument. But Bohanan never said that he would like to represent himself, never asked for a continuance for any reason, and never specifically said what he wanted the court to do if Jeffrey was allowed to withdraw.

---

[2]The other procedural requirements are that the assertion must be knowing, intelligent, timely, and not for the purpose of delay. *Mayo v. State*, 336 Ark. 275, 280, 984 S.W.2d 801, 804 (1999).

The circuit court found itself in a bit of a pickle. It could keep Mr. Jeffrey on the case leaving Bohanan to argue on appeal as he does now that the court ignored his requests for self-representation and so he had been denied the right to represent himself. *See, e.g.*, *Pierce v. State*, 362 Ark. 491, 209 S.W.3d 364 (2005) (Circuit court erred in forcing defendant to be represented by counsel and in refusing to allow him to appear pro se.). Or if the court had permitted self-representation, Bohanan could then claim on appeal that he had been denied the right to counsel. *See, e.g.*, *Bledsoe v. State*, 337 Ark. 403, 989 S.W.2d 510 (1999) (Reversible error was injected into the trial process when the defendant did not knowingly and intelligently waive his right to counsel.). The requirement of an unequivocal statement resolves this predicament by forcing Bohanan to make a clear choice. *Reed v. State*, 2017 Ark. 246, 524 S.W.3d 929.

Given this record, we hold that Bohanan did not make a clear and unequivocal request for self-representation. Overall, the focus of Bohanan's communication with the court was about his dissatisfaction and unhappiness with Mr. Jeffrey. Bohanan never asked to appear pro se, and a request for self-representation cannot be reasonably inferred from his written note stating that he wanted to dismiss his attorney. Nor can a request to self-represent be implied from his oral statement that he had dismissed Mr. Jeffrey and did not want his attorney's help "at all." That Bohanan wanted to fire his public defender was not an unequivocal expression of a desire to be his own attorney. Bohanan's conducting his own direct examination and closing argument does not sufficiently support the inference that he waived counsel and chose to self-represent. In the totality of the circumstances,

Bohanan's statements could be reasonably inferred to mean that he wanted a different attorney, not that he wanted to represent himself.

To sum it all up, Bohanan's statements to the court were equivocal on self-representation, so the presumption of counsel applied. The circuit court therefore was not required to independently probe whether Bohanan wanted to represent himself. We find no reversible error; the judgment is therefore affirmed.

Affirmed.

KLAPPENBACH and BARRETT, JJ., agree.

*Robert N. Jeffrey, Attorney at Law*, by: *Robert N. Jeffrey*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Jason Michael Johnson*, Ass't Att'y Gen., for appellee.