Cite as 2026 Ark. App. 285

# ARKANSAS COURT OF APPEALS
### DIVISION IV
No. CR-25-433

| | |
|---|---|
| PAUL VINCENT FOX<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | Opinion Delivered May 6, 2026<br><br>APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT [NO. 23CR-22-1175]<br><br>HONORABLE H.G. FOSTER, JUDGE<br><br>AFFIRMED |

## WENDY SCHOLTENS WOOD, Judge

Paul Fox appeals from a Faulkner County Circuit Court sentencing order convicting him of two counts of second-degree domestic battery, three counts of endangering the welfare of a minor, criminal mischief, and intimidating a witness and sentencing him to an aggregate of seventeen years' imprisonment. In addition to challenging the sufficiency of the evidence supporting the convictions, Fox contends that the circuit court erred in denying his request to represent himself at his jury trial and abused its discretion in not permitting him to call his witnesses during trial. We affirm.

### I. *Facts*

At a pretrial hearing the day before trial, defense counsel informed the court that he was ready for trial but had a doctor's appointment for his knee later that day and that the doctor may tell him he needs to be off his knee. Fox said he did not want a continuance. He

wanted a trial the following day because he had witnesses coming into town to "speak up" for him; otherwise, he wanted his case dismissed. The circuit court asked Fox, "Do you want to represent yourself tomorrow?" Fox responded, "If [my attorney] cannot represent me, yes, I do. It's my only choice. Either that or throw the case out." The court later asked Fox if he was satisfied with defense counsel. Fox answered, "Yeah," and when the court asked Fox if he felt good about defense counsel, Fox said, "Of course I do." However, Fox added, "I think I could even represent myself to be quite honest with you." The court determined that Fox's request to represent himself was a conditional request—not an unequivocal waiver of the right to counsel.

The next day, defense counsel was present for the trial. After the jury was sworn in, Fox again stated that he wanted his brother to testify, and the State objected because the defense had not timely disclosed its witnesses. The court stated that the issue of whether the defense would be allowed to call his brother was "an argument that we're going to have to have on the record at some point."

The issue of self-representation was discussed again after Fox asked the court how to contact witnesses to let them know he intended to call them to testify. When the court informed Fox that the discovery deadline had passed, Fox asked, "[I]f I fire [my attorney] today . . . if I let him go and then choose to represent myself, how would I go about contacting them[?]" The court told Fox if he let his attorney go, the court would likely have to declare a mistrial. The State objected, stating that it was too late to relieve Fox's attorney because the

trial had started. Fox said that he would "rather fire him and hire another attorney" if he could. The court stated that could not be done in the middle of trial, and the trial proceeded.

Angel McFarland testified that she has three children with Fox and that she and the children lived in Texas in November 2022. She stated that she was in Conway, Arkansas, on November 22, to pick up the children, who had been visiting Fox over Thanksgiving. McFarland testified that she and the children, along with her puppy, stayed overnight at Fox's apartment, but she decided to leave because Fox "had an issue" with the puppy making noise. An argument ensued. Fox threw the children's clothes and a dog kennel off his second-floor balcony. McFarland retrieved the children and placed them in their car seats in the back seat of her SUV. The two-year-old was behind McFarland, the four-year-old was in the middle, and the six-year-old was behind the passenger seat.

McFarland allowed Fox to tell the children goodbye, and he began speaking poorly of McFarland in front of the children. McFarland said that Fox reached through the rear passenger-side window to give the six-year-old a hug before going to the rear driver's-side window. McFarland said that Fox continued to speak poorly about her and kept his hands inside the vehicle so that she could not close the window. Once he removed his hands, she began to close the window. When the window was almost closed, she heard "an explosion of glass" behind her, and the children began screaming. McFarland said that she did not see Fox hit the window, but she assumed he broke the window because no one else was around her vehicle. She said she and the children were screaming, and Fox was tackled by a police officer. McFarland said that the two-year-old and the four-year-old had scrapes on them from

3

the glass and were bleeding. McFarland testified that a no-contact order was issued after the incident but that Fox violated the order by sending her text messages and calling her.

Officer Brandon Huff of the Conway Police Department said that he was responding to an unrelated incident when he heard "screaming and yelling" about 150 yards away. He walked over to investigate, and when he was about 50 yards away from McFarland's vehicle, he saw a male silhouette make a violent motion toward the vehicle with something on the right side of his body and then heard a crash of glass. The officer could not tell if the man punched the vehicle or used his elbow or shoulder but said the movement was not accidental. Officer Huff immediately ran to the vehicle, grabbed Fox, and pushed him on the ground. Officer Huff did not see anyone else near the vehicle except Fox. Officer Huff testified that in his experience, it is difficult to break a car window and often requires tools and intent. He said that a window can be broken using a fist but that pushing or tapping will not cause it to break, acknowledging that a window is easier to break if it is partially down. He also said he saw the children covered in glass.

Officer Lucas Babcock of the Conway Police Department testified that when he arrived at the scene, Fox was in custody, and the children were upset, crying, and had injuries, which he photographed.

After the State rested, defense counsel moved for a directed verdict on counts one through six, arguing that there was no clear evidence that Fox broke the window since no one clearly saw him break it and that there was no evidence he did so knowingly. The circuit court denied his directed-verdict motion.

Fox testified that when he was trying to hug the children goodbye through the SUV's window, McFarland rolled up the window and attempted to run over him, but he jumped out of the way. Fox also testified that McFarland hit him with her vehicle, causing him to fly fourteen feet across the yard. Fox denied hitting the window or intentionally breaking it. He did not know how it broke but thought it could have broken when McFarland hit him with her vehicle. Fox stated that police officers nearby saw the incident. The body-camera footage from one of the officers on the scene, Officer Gary Griffin, was introduced into evidence and played for the jury. In the video, Fox can be heard saying several times, "I did not mean to. It was a fu***** accident."

The State called Officer Huff as a rebuttal witness. He stated that he did not see Fox get hit by a vehicle and "fly 14 feet in the air" and never saw the vehicle move until the officers told McFarland to leave. Officer Huff also stated that Fox was standing when he arrived on the scene.

Defense counsel renewed his motion for directed verdict at the close of the evidence, which was denied. The jury found Fox guilty on all charges and sentenced him to an aggregate of seventeen years' imprisonment. This appeal followed.

## II. *Discussion*

### A. Sufficiency of the Evidence

When reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the State and consider only the evidence that supports the verdict. *Jackson v. State*, 2026 Ark. App. 78, at 1, 729 S.W.3d 739, 740. We will affirm the verdict if

5

substantial evidence supports it. *Id.* at 1–2, 729 S.W.3d at 740. Substantial evidence is evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture. *Id.* at 2, 729 S.W.3d at 740. In resolving conflicting testimony and inconsistent evidence, it is the jury's role to assess witness credibility and resolve discrepancies in the evidence. *Id.*, 729 S.W.3d at 740. The jury may accept or reject testimony as it sees fit. *Id.*, 729 S.W.3d at 740. The jury is entitled to draw upon common sense and experience in reaching its verdict. *Id.*, 729 S.W.3d at 740.

Fox first argues that the evidence is insufficient to support the two second-degree domestic-battery convictions. "A person commits domestic battering in the second degree if . . . [t]he person knowingly causes physical injury to a family or household member he or she knows to be sixty (60) years of age or older or twelve (12) years of age or younger." Ark. Code Ann. § 5-26-304(a)(4) (Supp. 2024).

Fox contends that the State failed to establish that he was responsible for breaking the window of the SUV. He asserts that no one saw him break the window—neither McFarland nor Officer Babcock. He contends that Officer Huff, who saw a male silhouette make a violent motion with something on the right side of his body and then heard a crash of glass, could not positively say whether Fox used his hand, shoulder, or elbow to break the window. Fox contends that because Officer Huff was fifty yards away, his testimony was less

credible. Fox argues that the jury was left to rely on speculation and conjecture in determining how the glass broke.[1]

The evidence established that Fox was the only person near McFarland's vehicle when she heard an "explosion of glass" and her children began screaming. Just before the glass shattered, Officer Huff saw a male silhouette make a "violent movement with something on the right side of his body," heard the "crash of the glass," and heard children "screaming and crying." When Officer Huff reached the scene, Fox was standing on the grass beside the vehicle. Officer Huff did not see anyone else in the apartment parking lot at that time—just Fox. Officer Huff said he saw a deliberate movement, not an accidental movement such as bumping into the window or leaning up against it, adding that deliberate intention is needed to break a car window. In addition, Fox can be heard in the body-camera footage stating that he did not mean to do it—that it was an accident.

On this record, the jury could reasonably conclude that Fox was the individual who broke the window of McFarland's SUV. The jury is not required to abandon common sense, and it may draw reasonable inferences from the evidence. *Turner v. State*, 2019 Ark. App. 476, at 5, 588 S.W.3d 375, at 378. We hold that substantial evidence supports the two second-degree domestic-battery convictions.[2]

---

[1]We note that although Fox argued in his directed-verdict motion that there was no evidence that he broke the window knowingly, he does not make this argument on appeal.

[2]Because we affirm the domestic-battery convictions, we also affirm the sentencing enhancement pursuant to Arkansas Code Annotated section 5-4-702 (Repl. 2024) since Fox makes no independent argument that the enhancement should be reversed.

7

As he did in his second-degree domestic-battery argument, Fox contends that because there was insufficient evidence that he broke the window, the jury was left to speculate as to how the glass broke; thus, there is insufficient evidence to support the convictions for second-degree endangering the welfare of a minor and criminal mischief. "A person commits the offense of endangering the welfare of a minor in the second degree if he or she knowingly engages in conduct creating a substantial risk of serious harm to the physical or mental welfare of another person known by the person to be a minor." Ark. Code Ann. § 5-27-206(a)(1) (Repl. 2024). "A person commits the offense of criminal mischief in the first degree if he or she purposely and without legal justification destroys or causes damage to any . . . [p]roperty of another person[.]" Ark. Code Ann. § 5-38-203(a)(1) (Repl. 2024).

The same evidence supporting the two domestic-battery convictions supports Fox's endangering-the-welfare-of-a-minor and criminal-mischief convictions: Fox was the only person near McFarland's rear driver's-side window when she heard an "explosion of glass" and her children began screaming; Officer Huff saw a male silhouette make an intentional and "violent movement with something on the right side of his body" toward the SUV, heard the "crash of the glass," heard children "screaming and crying," and saw Fox standing on the grass beside the vehicle; and Fox stated on the video that he did not mean to do it—that it was an accident.

Last, Fox contends that the evidence is insufficient to support the conviction for intimidating a witness.

A person commits the offense of intimidating a witness if he or she threatens a witness or a person he or she believes may be called as a witness with the purpose of: (1) Influencing the testimony of that person; (2) Inducing that person to avoid legal process summoning that person to testify; or (3) Inducing that person to absent himself or herself from an official proceeding to which that person has been legally summoned.

Ark. Code Ann. § 5-53-109(a) (Repl. 2024).

The State argues that Fox made no motion for directed verdict challenging this offense. We agree. At trial, defense counsel stated that his motion was for counts one through six. Count seven was the offense of intimidating a witness. Moreover, nothing in Fox's directed-verdict motion challenged the offense of intimidating a witness. We do not address arguments concerning the sufficiency of the evidence that supports a conviction if the defendant did not move for a directed verdict on that charge. *Burns v. State*, 2024 Ark. App. 329, at 5, 690 S.W.3d 133, 140.

## B. The Circuit Court Erred in Denying Fox's Request for Self-Representation

In *Faretta v. California*, 422 U.S. 806, 819 (1975), the Supreme Court held that the right to self-representation for criminal defendants is "necessarily implied by the structure of the [Sixth] Amendment" to the United States Constitution. Our supreme court has stated that "[t]here is an inherent tension, however, between the Supreme Court's command that criminal defendants receive effective counsel and permitting those same defendants to handle their own defenses, virtually always without relevant expertise and sometimes with literal life-and-death stakes." *Reed v. State*, 2017 Ark. 246, at 1–2, 524 S.W.3d 929, 929. As a result, defendants invoking the right to self-representation must "knowingly and

9

intelligently forgo" the right to counsel after having been made aware of the "dangers and disadvantages of self-representation." *Faretta*, 422 U.S. at 835. Our appellate courts require that (1) the request to waive counsel must be unequivocal and timely asserted, (2) the waiver must be knowing and intelligent, and (3) the defendant must not have engaged in conduct that would prevent the fair and orderly exposition of the issues. *Reed*, 2017 Ark. 246, at 2, 524 S.W.3d at 929–30. A defendant's statements must be viewed in their entirety to determine whether the defendant's attempt to waive counsel and self-represent is sufficiently unequivocal. *Chambers v. State*, 2020 Ark. App. 54, at 11, 595 S.W.3d 371, 378.

At trial, the issue of self-representation came up several times because Fox wanted to call certain witnesses to testify on his behalf. Each time, the State objected, arguing that the defense had failed to timely disclose the witnesses. In response, Fox asked the court about firing his attorney and representing himself so he could call the witnesses. The circuit court asked Fox a couple of times about representing himself, and Fox answered: "If [my attorney] cannot represent me, yes, I do. It's my only choice. Either that or throw the case out," or "I would rather fire [my attorney] and hire another attorney if I can." When the court asked Fox if he was satisfied with defense counsel, Fox answered, "Yeah," and when the court asked Fox if he felt good about defense counsel, Fox said, "Of course I do." In light of Fox's statements, the circuit court determined that Fox's request to represent himself was a conditional request—not an unequivocal waiver of the right to counsel.

On appeal, Fox argues that after he made a request to represent himself, the circuit court failed to conduct the proper inquiry to decide if he made a knowing and intelligent

waiver of his right to counsel. He claims that the court "simply ignored [his] request to represent himself." However, the circuit court evaluated Fox's request and found that Fox's request was equivocal.

In *Chambers*, this court rejected Chambers's argument that his request to represent himself was unequivocal:

> Here, while Chambers requested to represent himself because he did not want his court-appointed defender and could not afford to hire a private attorney, he stated that he would represent himself "if [he had] to." After the circuit court asked Chambers about his education and why he thought he could represent himself, Chambers stated that he did not think he could. The circuit court reiterated on two more occasions that it did not believe Chambers had really indicated he wanted to represent himself; after the circuit court's second statement to that effect, Chambers responded that he did not want to represent himself, but he did not feel he had any other option. These statements indicate that Chambers's requests to proceed pro se were not unequivocal; therefore, the circuit court correctly denied Chambers's request to represent himself at trial.

2020 Ark. App. 54, at 11–12, 595 S.W.3d at 378.

Like *Chambers*, Fox's request to represent himself was equivocal. He said: "[I]f I fire my attorney today . . . then [I] choose to represent myself," and I "would rather fire him and hire another attorney if I can." Moreover, he voiced satisfaction with his attorney. These statements indicate that Fox's requests to represent himself were equivocal. If his request is equivocal, the circuit court does not need to respond or to conduct a hearing on the issue of self-representation because there has been no clear indication of the defendant's desire to waive the right to counsel. *Bohanan v. State*, 2021 Ark. App. 338, at 1, 634 S.W.3d 583, 584. Accordingly, we affirm the circuit court's finding that Fox did not unequivocally invoke his right to self-representation.

## C. The Circuit Court Abused its Discretion in Not Permitting Fox to Call All His Witnesses During Trial

Fox contends that the circuit court abused its discretion in excluding the witnesses—specifically his brother—he wanted to call to testify on his behalf during trial. Matters pertaining to the admissibility of evidence are left to the sound discretion of the circuit court, and we will not reverse such rulings absent an abuse of that discretion. *McEwing v. State*, 366 Ark. 456, 460, 237 S.W.3d 43, 46 (2006). In addition, we will not reverse absent a showing of prejudice because prejudice is not presumed. *Id.* at 461, 237 S.W.3d at 47.

The day before trial, Fox informed the court that he had multiple family members coming to trial to "speak up for [him]." The State objected, stating that the witness deadline had passed, the State had not been provided with a witness list, and no defense witnesses had been subpoenaed. Defense counsel acknowledged that Fox had sent him a letter stating that he was not satisfied with counsel's representation because he had not submitted the list of witnesses Fox thought should be called.

The following day after the jury was empaneled, the witness issue arose again during a discussion of the exclusionary rule pursuant to Arkansas Rule of Evidence 615. The court asked Fox if his brother was going to testify, and Fox said yes. The court stated that if Fox wanted him to testify, then he would have to leave the courtroom. Again, the State objected on the basis that the witness had not been disclosed. The court responded:

> Right . . . . I anticipate that the issue of whether he is allowed to be called due to a failure of discovery on the defendant's part . . . that's an argument that we're going to have to have on the record at some point.

Thereafter, Fox testified, but he did not move to call his brother or any other witnesses to testify.

On appeal, Fox argues that the circuit court abused its discretion when it excluded his witnesses. He argues that the State did not request the disclosure of defense witnesses pursuant to Arkansas Rule of Criminal Procedure 18.3, and in the absence of a request, the circuit court erroneously sanctioned Fox for not providing the information to the State. *See Watson v. State*, 50 Ark. App. 98, 902 S.W.2d 253 (1995). Alternatively, Fox contends that the court should have allowed the State time to interview Fox's brother when the issue arose before trial, thereby alleviating any prejudice to the State. *See Mills v. State*, 322 Ark. 647, 910 S.W.2d 682 (1995). Fox asserts that he was prejudiced because without his brother's testimony, he had no one to corroborate his testimony or discredit McFarland's testimony.

Fox's arguments are not preserved for review. The court specifically stated that the issue of whether Fox's brother would be allowed to testify due to a discovery violation was "an argument that we're going to have to have on the record at some point." However, no further argument or objection was made on the record following this discussion. Neither Fox nor his attorney sought to call Fox's brother or any other witness; therefore, the circuit court did not rule on the issue. The failure to obtain a ruling on an issue at the circuit court level, including a constitutional one, precludes review on appeal. *Kelley v. State*, 375 Ark. 483, 488, 292 S.W.3d 297, 300 (2009); *see also Bayless v. State*, 326 Ark. 869, 878, 935 S.W.2d 534, 539 (1996) (holding that the defendant's discovery-based objection was not preserved because the defendant failed to obtain a ruling).

Moreover, we do not reverse in the absence of prejudice. Although Fox contends that he was prejudiced because he had no one to corroborate his testimony or discredit McFarland, Fox failed to proffer his brother's testimony. We cannot determine whether he has suffered prejudice without a proffer of the excluded testimony. *McEwing*, 366 Ark. at 462, 237 S.W.3d at 47.

Affirmed.

THYER and BROWN, JJ., agree.

*Erin W. Lewis*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Jason Michael Johnson*, Ass't Att'y Gen., for appellee.